[L.A. No. 31444. Nov. 27, 1981.]

ALICE BARELA, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
LEONARDO VALDEZ, Real Party in Interest.

**COUNSEL**

Katherine R. Wolff for Petitioner.

Ronald S. Javor, Fred Okrand, Ronald R. Talmo and Robert Klotz as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Paul G. Mast for Real Party in Interest.

## OPINION

**BIRD, C. J.**—In an unlawful detainer action, may a renter raise as an affirmative defense the claim that a landlord seeks to evict in retaliation for the tenant's complaint to the police that the landlord has committed a crime?

### I.

On April 12, 1980, petitioner, Alice Barela, called the Santa Ana Police Department to complain that her landlord, Leonardo Valdez (real party in interest), had sexually molested her nine-year-old daughter.[1]

Seven days later, on April 19, 1980, Valdez served Barela with a three-day notice to "Pay Rent or Quit." He demanded rent of $650 per month, rather than the $200 per month she had been paying. Prior to her complaint to the police, she had rented the house from him for four years without any problem.

In May of 1980, Valdez filed an unlawful detainer action against Barela, based on her failure to pay $650 per month rent in May. That action was dismissed, apparently because Valdez had never served the 30-day notice of rent increase required by law. However, in late May he served Barela with a 30-day notice of termination of her month-to-month tenancy. Barela did not move. On July 21, 1980, while criminal charges were pending against him, Valdez filed a new unlawful detainer action, based on the 30-day notice of termination. Barela responded with an answer alleging as an affirmative defense that she was being evicted in retaliation for her exercise of constitutionally protected rights.

After trial, the court issued the following findings of fact: (1) "[t]his eviction of the defendant by the plaintiff was caused by the complaint of the defendant against the plaintiff to the police," and (2) "[t]he pending criminal trial against the plaintiff which was the result of defendant's complaint to the police led to a breakdown of the parties' ability to live peacefully in the same community."

---

[1] The record indicates that on August 25, 1980, Valdez pleaded guilty to a violation of Penal Code section 647, subdivision (a) (lewd or dissolute conduct in public).

In addition, the court issued conclusions of law, holding that the eviction was not protected by section 1942.5 of the Civil Code[2] or by the standards of *S.P. Growers Assn.* v. *Rodriguez* (1976) 17 Cal.3d 719 [131 Cal.Rptr. 761, 552 P.2d 721]. The court granted Valdez the relief sought, including restitution of the premises and back rent. This result was held to be equitable.

The appellate department of the superior court upheld the trial court's decision without issuing an opinion, and refused to certify the case to the Court of Appeal. (Code Civ. Proc., § 911.) Barela filed a petition for a writ of mandate in the Court of Appeal. She requested that the superior court be ordered to vacate its order and to either enter judgment for petitioner or rehear the case, giving proper consideration to the defense of retaliatory eviction.[3] The Court of Appeal summarily denied her petition. Barela then filed a petition for a writ of mandate before this court and an alternative writ of mandate was issued.

## II.

This case involves one basic issue—whether an affirmative defense is available in an unlawful detainer action if it is based on the allegation that the landlord seeks to evict in retaliation for the tenant's report to the police that the landlord has committed a crime.[4]

---

[2]Unless otherwise noted, all statutory references are to the Civil Code.

[3]Relief by means of writ of mandate is appropriate under these circumstances. (*Green v. Superior Court* (1974) 10 Cal.3d 616, 622, fn. 5 [111 Cal.Rptr. 704, 517 P.2d 1168]; *Schweiger* v. *Superior Court* (1970) 3 Cal.3d 507, 517-518 [90 Cal.Rptr. 729, 476 P.2d 97].)

[4]Real party in interest argues that the trial court did consider the defense of retaliatory eviction and rejected it. He claims petitioner failed to show that the eviction was actually retaliatory.

Since neither party has supplied a complete transcript of the proceedings below, this court must rely on the trial court's findings of fact. The trial court made two key factual findings: (1) petitioner's eviction was caused by her complaint to the police; and (2) the complaint to the police also caused "a breakdown of the parties' ability to live peacefully in the same community."

Relying on the second of these two findings, real party in interest asserts that the trial court decision was based solely on the factual determination that the landlord and tenant were unable to live in the same community. He argues that this is a legally permissible, nonretaliatory ground for evicting a tenant. However, he conveniently ignores the crucial link between the two findings of fact. The trial court found that the tenant's allegedly protected activity, her complaint to the police, caused the breakdown in relations. If real party in interest's argument were accepted, the defense of retaliatory eviction would be precluded, since in every case a landlord could assert that a tenant's

■ Unlawful detainer actions are summary proceedings. Only "issues directly relevant to the ultimate question of possession" may be raised in defense of an unlawful detainer action. (*Green* v. *Superior Court, supra*, 10 Cal.3d 616, 634.) Generally counterclaims, cross-complaints and affirmative defenses cannot be considered. (*Union Oil Co.* v. *Chandler* (1970) 4 Cal.App.3d 716, 721 [84 Cal.Rptr. 756].)

The defense of "retaliatory eviction" has been firmly ensconced in this state's statutory law and judicial decisions for many years. (See, e.g., § 1942.5; *S.P. Growers Assn.* v. *Rodriguez, supra*, 17 Cal.3d 719, 724; *Schweiger* v. *Superior Court, supra*, 3 Cal.3d 507, 517.) "It is settled that a landlord may be precluded from evicting a tenant in retaliation for certain kinds of lawful activities of the tenant. As a landlord has no right to possession when he seeks it for such an invalid reason, a tenant may raise the defense of retaliatory eviction in an unlawful detainer proceeding. [Citations.]" (*S.P. Growers, supra*, at p. 724.) The retaliatory eviction doctrine is founded on the premise that "[a] landlord may normally evict a tenant for any reason or for no reason at all, but he may not evict for an improper reason . . . ." (*Id.*, at p. 730.)

The affirmative defense of retaliatory eviction was first recognized by this court in *Schweiger* v. *Superior Court, supra*, 3 Cal.3d 507. There, the statutory "repair and deduct" provision (§ 1942) was construed so as to include protection against eviction for those tenants who exercised their statutory rights. The same year, the Legislature codified this protection in section 1942.5. The statute prohibited landlords from evicting a tenant in retaliation for the tenant's exercise of the right to repair and deduct or the tenant's complaint to the authorities about housing code violations.

In 1976, this court extended the scope of the common law retaliatory eviction defense beyond mere complaints about conditions of tenancy. (*S.P. Growers Assn.* v. *Rodriguez, supra*, 17 Cal.3d 719, 728.) In *S.P. Growers*, this court held that an eviction in retaliation for the filing of a federal lawsuit charging violations of a federal farm labor statute was

exercise of protected rights was so infuriating that they could no longer live or work together. As a result, the statutory and common law protections against retaliatory evictions would be rendered nullities.

The facts of this case clearly demonstrate that petitioner was evicted in retaliation for her complaint to the police. Therefore, this court must assume that the trial court found such a factual showing insufficient as a matter of law to support a retaliatory eviction defense.

improper. The test set down in *S.P. Growers, supra,* is quite simple. ▉ A valid defense of retaliatory eviction may be advanced if, on balance, the public policies furthered by protecting a tenant from eviction outweigh the state's interest in ensuring that unlawful detainer proceedings are truly summary. (*Id.,* at pp. 728-729.)

The Legislature repealed section 1942.5 in 1979 and reenacted it with amendments.[5] (Stats. 1979, ch. 652, § 2, p. 2005.) The statutory retaliatory eviction defense was greatly expanded. The time period during which a tenant is protected was extended, and the grounds for which retaliation is prohibited were enlarged. (§ 1942.5, subds. (a) and (c).) In addition, the 1979 amendments added a specific statement that the statutory remedies provided by section 1942.5 are in addition to any other remedies provided by statutory or decisional law. (*Id.,* subd. (h).)

---

[5]Section 1942.5 currently provides as follows: "(a) If the lessor retaliates against the lessee because of the exercise by the lessee of his rights under this chapter or because of his complaint to an appropriate agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the payment of his rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services within 180 days:

"(1) After the date upon which the lessee, in good faith, has given notice pursuant to Section 1942, or has made an oral complaint to the lessor regarding tenantability; or

"(2) After the date upon which the lessee, in good faith, has filed a written complaint, or an oral complaint which is registered or otherwise recorded in writing, with an appropriate agency, of which the lessor has notice, for the purpose of obtaining correction of a condition relating to tenantability; or

"(3) After the date of an inspection or issuance of a citation, resulting from a complaint described in paragraph (2) of which the lessor did not have notice; or

"(4) After the filing of appropriate documents commencing a judicial or arbitration proceeding involving the issue of tenantability; or

"(5) After entry of judgment or the signing of an arbitration award, if any, when in the judicial proceeding or arbitration the issue of tenantability is determined adversely to the lessor.

"In each instance, the 180-day period shall run from the latest applicable date referred to in paragraphs (1) to (5), inclusive.

"(b) A lessee may not invoke the provisions of subdivision (a) more than once in any 12-month period.

"(c) It shall be unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of such acts, for the purpose of retaliating against the lessee because he or she has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law. In an action brought by or against the lessee pursuant to this subdivision, the lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory.

"(d) Nothing in this section shall be construed as limiting in any way the exercise by the lessor of his rights under any lease or agreement or any law pertaining to the hiring of property or his right to do any of the acts described in subdivision (a) or (c) for any

Thus, California has two parallel and independent sources for the doctrine of retaliatory eviction. This court must decide whether petitioner raised a legally cognizable defense of retaliatory eviction under the statutory scheme and/or the common law doctrine.

■ Section 1942.5 is a remedial statute aimed at protecting tenants from certain types of abuses. It is to be "liberally construed to effect its objectives and to suppress, not encourage, the mischief at which it was directed. [Citation.]" (*Kriz v. Taylor* (1979) 92 Cal.App.3d 302, 311 [154 Cal.Rptr. 824].)

Subdivision (c) of section 1942.5 provides that it is unlawful "for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of such acts, *for the purpose of retaliating against the lessee because he or she has . . . lawfully and peaceably exercised any rights under the law.*" (Italics added.) This subdivision was added to the statute in 1979. (Stats. 1979, ch. 652, § 2, pp. 2005-2006.) It has been denominated a "boilerplate" provision because of its broad prohibition against retaliation by a landlord when a tenant has exercised valid legal rights under the law. (See *Review of Selected 1979 California Legislation* (1979) 11 Pacific L.J. 601, 602.)

■ Petitioner argues that in reporting a crime to the police, she was exercising a legal right protected by section 1942.5, subdivision (c).

lawful cause. Any waiver by a lessee of his rights under this section shall be void as contrary to public policy.

"(e) Notwithstanding the provisions of subdivisions (a) to (d), inclusive, a lessor may recover possession of a dwelling and do any of the other acts described in subdivision (a) within the period or periods prescribed therein, or within subdivision (c), if the notice of termination, rent increase, or other act, and any pleading or statement of issues in an arbitration, if any, states the ground upon which the lessor, in good faith, seeks to recover possession, increase rent, or do any of the other acts described in subdivision (a) or (c). If such statement be controverted, the lessor shall establish its truth at the trial or other hearing.

"(f) Any lessor or agent of a lessor who violates this section shall be liable to the lessee in a civil action for all of the following:

"(1) The actual damages sustained by the lessee.

"(2) Punitive damages in an amount of not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000) for each retaliatory act where the lessor or agent has been guilty of fraud, oppression, or malice with respect to such act.

"(g) In any action brought for damages for retaliatory eviction, the court shall award reasonable attorney's fees to the prevailing party if either party requests attorney's fees upon the initiation of the action.

"(h) The remedies provided by this section shall be in addition to any other remedies provided by statutory or decisional law."

She notes that, "It is the duty and the right, not only of every peace officer of the United States, but of every citizen, to assist in prosecuting, and in securing the punishment of, any breach of the peace of the United States." (*In re Quarles and Butler* (1895) 158 U.S. 532, 535 [39 L.Ed. 1080, 1081, 15 S.Ct. 959].)

California has a long history of protecting those citizens who report violations of the criminal laws. ▉ "It is for the best interests of society that those who offend against the laws shall be promptly punished, and that any citizen who has good reason to believe that the law has been violated shall have the right to cause the arrest of the offender." (*Ball* v. *Rawles* (1892) 93 Cal. 222, 228 [28 P. 937].)

▉ Implicit in the passage of any remedial legislation is a general tent to protect from intimidation those who report violations of the law. (*Edwards* v. *Habib* (D.C. Cir. 1968) 397 F.2d 687, 701-702; see also *Schweiger* v. *Superior Court, supra,* 3 Cal.3d 507, 513.) Laws which define certain acts as criminal would be meaningless if citizens who reported crime were not protected from vindictive retaliation. This fundamental principle is embodied in Penal Code section 136.1, which declares that it is a misdemeanor to dissuade or attempt to dissuade any victim of crime from reporting the crime to the police. (Pen. Code, § 136.1, subd. (b)(1).)[6]

Thus, every citizen has a right protected by state law to report criminal violations to the police. Since petitioner merely engaged in a peaceful and lawful exercise of this basic right when she reported her landlord's crime to the police, her eviction violated the statutory prohibition against evictions in retaliation for the exercise of any rights under the law. (§ 1942.5, subd. (c).)[7]

---

[6]Under subdivision (a) of Penal Code section 136.1, it is a misdemeanor to attempt to dissuade a witness or victim from testifying at any trial or other proceeding. At the time of respondent's repeated attempts to evict appellant, criminal charges were still pending against him.

[7]Petitioner also argues that her right to complain to the police about a violation of the criminal law is protected by section 1942.5, subdivision (c) because it is a right included within the provisions of the state and federal Constitutions governing free speech and the right to petition the government for the redress of grievances. (U.S. Const., 1st Amend.; Cal. Const., art. I, §§ 2 and 3.) She notes that the right to petition the government for redress of grievances "is an attribute of national citizenship," arising from "[t]he very idea of government, republican in form." (*United States* v. *Cruikshank* (1875) 92 U.S. (2 Otto) 542, 552 [23 L.Ed. 588, 591].) This right has been considered "among the most precious of the liberties safeguarded by the Bill of

An analysis of the common law defense of retaliatory eviction leads to a similar conclusion. "In evaluating whether defendants have raised a valid defense of retaliatory eviction, we must engage in a balancing process. We must determine whether the public policies furthered by protecting defendants from eviction outweigh the interests in preserving the summary nature of unlawful detainer proceedings. [Citation.]" (*S.P. Growers Assn.* v. *Rodriguez, supra*, 17 Cal.3d 719, 724.)

■ The important public policy asserted by petitioner is clear. Citizens have a right and a duty to report violations of the law to the authorities. The effective enforcement of this state's criminal laws depends upon the willingness of victims and witnesses to report crime and to participate in the criminal justice process.

The Legislature has repeatedly demonstrated its concern for victims of crime by adopting programs designed to compensate victims (Gov. Code, §§ 13959-13969, 29631-29636) and to render their contacts with the criminal justice system less painful (Pen. Code, §§ 13835-13846). One of the goals of these programs is to encourage victims to report crime. "Unreported crimes occur at more than twice the rate of reported crimes and the reasons people give for not reporting indicate that they are disenchanted with the criminal justice system." (Pen. Code, § 13835, subd. (e).)

In light of the strong policy reasons for encouraging the reporting of crime, it is inconceivable that the Legislature could have countenanced the use of the statutorily created summary eviction proceedings to punish a tenant who reported a crime to the police. To hold otherwise would be to create a special class of criminals—those who also happen to be landlords—with a legally sanctioned means of punishing the victims or witnesses of their crime.[8]

---

Rights." (*Mine Workers* v. *Illinois Bar Assn.* (1967) 389 U.S. 217, 222 [19 L.Ed.2d 426, 430, 88 S.Ct. 353]; see also *Stern* v. *United States Gypsum, Inc.* (7th Cir. 1977) 547 F.2d 1329, 1342.) However, the right to report violations of criminal statutes to the police is protected by state law. Therefore, it is not necessary to reach petitioner's constitutional claims.

[8]In an analogous area of law, this court has held that an employer cannot discharge an employee in retaliation for the employee's exercise of a legally protected right. *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314] held that despite the employer's "generally unlimited right to discharge an employee" (*Petermann* v. *International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184, 189 [344 P.2d 25]), the employer could not discharge an employee because he refused to commit a crime. (*Tameny*, at pp. 172-178. See also *Glenn* v.

This case is an even stronger one than *S. P. Growers, supra*, wherein this court stressed the importance of preventing retaliatory evictions where a remedial scheme depends upon private initiative for enforcement. (17 Cal.3d at pp. 725, 728.) In that case, a landlord was prohibited from evicting a tenant in retaliation for the tenant's filing of a lawsuit alleging violations of the federal farm labor statute, since that law depended for its enforcement on the willingness of individual workers to initiate litigation to vindicate their rights. This court held that to allow evictions in retaliation for such lawsuits would "frustrate the purposes of that act." (*Id.*, at p. 724.)

The public policy served in this case is clear and even more compelling. The landlord here was accused of a sexual assault on a child. This state has repeatedly emphasized that its citizens have a duty to protect children from sexual abuse. (See, e.g., Pen. Code, § 11166 [adults who work with children must report suspected cases of child abuse to the police, the sheriff, the probation department or the welfare department].)

The strong public policy interests in preserving the summary nature of the unlawful detainer proceeding will not be significantly impaired if the affirmative defense of retaliatory eviction is allowed here. (*S.P. Growers, supra*, 17 Cal.3d 719, 728-729.) Deciding whether an eviction is in retaliation for a tenant's exercise of basic legal rights presents no great burden for the trial court. This issue involves none of the "complex and protracted" questions of law that have previously moved the courts to reject certain defenses in unlawful detainer actions. (See *Union Oil Co.* v. *Chandler* (1970) 4 Cal.App.3d 716, 726 [84 Cal.Rptr. 756]; *S.P. Growers, supra*, 17 Cal.3d 719, 729.)

Some delay may occur if the defense is raised. However, any additional time spent is surely justified by the important public policy furthered by this defense. "[A]s the Supreme Court has noted, 'Some delay, of course, is inherent in any fair-minded system of justice.... Our courts were never intended to serve as rubber stamps for landlords seeking to evict their tenants, but rather to see that justice be done be-

*Clearman's Golden Cock Inn* (1961) 192 Cal.App.2d 793 [13 Cal.Rptr. 769] [no right to fire an employee because he had joined a union].) Although no statute specifically prohibited employers from discharging employees for these reasons, the courts found the prohibition implicit in the policies underlying the protected rights. "*Glenn*[,] *Petermann* [and *Tameny*] persuasively instruct us that one may not exercise normally unrestricted power if his reasons for its exercise contravene public policy." (*Schweiger* v. *Superior Court, supra*, 3 Cal.3d 507, 516.)

fore a man [or woman] is evicted from his [or her] home.'" (*S.P. Growers, supra*, 17 Cal.3d 719, 730, quoting *Pernell* v. *Southall Realty* (1974) 416 U.S. 363, 385 [40 L.Ed.2d 198, 214, 94 S.Ct. 1723].)[9]

## III.

Let a peremptory writ of mandate issue directing the superior court to vacate the Orange County Superior Court judgment entered in the case of Valdez v. Barela, No. AP-3097, and instructing the court to enter judgment for petitioner.

Tobriner, J., Mosk, J., Richardson, J., Newman, J., Kaus, J., and Broussard, J., concurred.

---

[9]In light of this disposition of the case, this court need not reach petitioner's claim that her eviction constituted state action in violation of her constitutional right to free speech and to petition the government for redress of grievances. (See *Edwards* v. *Habib, supra*, 397 F.2d 687, 690-698; *S.P. Growers, supra*, 17 Cal.3d 719, 730-731, fn. 5.)