[No. F002869. Fifth Dist. Mar. 16, 1984.]

EDC ASSOCIATES, LTD., Plaintiff and Appellant, v.
GLORIA GUTIERREZ, Defendant and Respondent.

COUNSEL

Wild, Carter, Tipton & Oliver and Trevor C. Clegg for Plaintiff and Appellant.

Kathleen P. Reilley for Defendant and Respondent.

OPINION

**ANDREEN, J.**—Plaintiff EDC Associates, Ltd., a California limited partnership (hereafter landlord), filed a complaint for unlawful detainer against defendant Gloria Gutierrez (hereafter tenant) in the Municipal Court of Fresno County. After trial the court issued judgment for tenant, finding that landlord's attempt at eviction was retaliatory in nature and that under the circumstances tenant's late tender of rent was excusable.

Landlord filed a notice of appeal to the superior court. The parties filed an "Agreed Statement on Appeal," and the matter came on for hearing before the appellate department of the superior court. The appellate department issued its decision reversing the judgment of the municipal court.

Tenant filed an application for certification to the Court of Appeal, the appellate department of the superior court granted same and we ordered the appeal transferred. (Cal. Rules of Court, rule 63; Code Civ. Proc., § 911.)

## I. Facts

The following summary is taken from the "Agreed Statement on Appeal" filed in the appellate department of the superior court, and other documents in the superior court file.

In May 1981 landlord and tenant entered into a written rental agreement establishing a month-to-month tenancy at a monthly rental of $260 payable in advance on the first day of each month. In May 1982, landlord hired a new property manager for the complex in which tenant's apartment was located. That same month, landlord served upon tenant a 30-day notice of termination of tenancy, which was later withdrawn by landlord after negotiations with tenant.

Landlord served a second 30-day notice of termination of tenancy on tenant on June 3, 1982. On July 1, 1982, tenant made a complaint of discrimination to the California Department of Fair Employment and Housing (DFEH), alleging that landlord was discriminating against her because of her Mexican ancestry. After investigation by DFEH, landlord and DFEH executed a written settlement agreement on July 26, 1982, which, inter alia, required landlord to acknowledge rescission of the June 3, 1982, notice of termination served on tenant.

Landlord served a third 30-day notice of termination of tenancy on tenant on August 30, 1982. Tenant again contacted DFEH and was advised that the agency would try to arrange a meeting with landlord's property manager. The DFEH representative erroneously advised tenant to withhold rent payments to landlord until a meeting could be held. Tenant had never before been late with a rent payment. The DFEH representative made three attempts to arrange the meeting, scheduling it once but then canceling it.

The rent due on September 1, 1982, was not paid. Landlord served a three-day notice to pay rent or quit on tenant on September 14, 1982. On September 30, 1982, tenant mailed a money order dated September 3, 1982,

to landlord for her September rent. On October 2, 1982, defendant mailed to landlord a money order dated October 2, 1982, for her October rent.

On the issue of retaliatory purpose, tenant introduced testimony that landlord's property manager and his supervisor, both black, had insulted and harassed tenant and her family and made derogatory racial slurs about tenant and her daughter. Landlord's property manager had evicted four or five other Chicano families.

Landlord's defense was that tenant's adult daughter had violated apartment complex rules and subjected the property manager and his supervisor to insults and racial slurs. Neither party requested a statement of decision. (Code Civ. Proc., § 632.)

### II. Did Landlord Waive the Right to Obtain Possession of the Leased Premises By Accepting Tenant's Tender of Rent?

It is a general rule that the right of a lessor to declare a forfeiture of the lease arising from some breach by the lessee is waived when the lessor, with knowledge of the breach, accepts the rent specified in the lease. (*Bedford Investment Co.* v. *Folb* (1947) 79 Cal.App.2d 363, 366 [180 P.2d 361].) While waiver is a question of intent, the cases have required some positive evidence of rejection on the landlord's part or a specific reservation of rights in the lease to overcome the presumption that tender and acceptance of rent creates. Thus, in *Karbelnig* v. *Brothwell* (1966) 244 Cal.App.2d 333 [53 Cal.Rptr. 335], the Court of Appeal noted, in finding a *lack* of waiver, "[h]ere the lessor not only relied upon the express agreement in the contract of the lease against waiver of its right to assert a forfeiture for the acceptance of rent after knowledge of the breach . . . but it also gave notice that its acceptance of the rent after the breach . . . became known was not to be construed as a . . . waiver of its right to assert a forfeiture." (*Id.,* at p. 342.) Similarly, in *Thriftimart, Inc.* v. *Me & Tex* (1981) 123 Cal.App.3d 751 [177 Cal.Rptr. 24], the finding of no waiver was justified because, "[the landlord], from the [inception of the breach], clearly evidenced its objection to it. . . . [I]t . . . evidence[d] its willingness to make a new agreement . . . . [Landlord] from the start, evidenced, not a willingness to waive . . . but a willingness to lease the land encroached upon, and, if that extended lease were arrived at, to continue the lease on the original parcel. We cannot impose on [landlord] a penalty for a reasonable effort to achieve an amicable adjustment of the breach." (*Id.,* at p. 754.)

An opinion by the Appellate Department of the Los Angeles Superior Court has gone so far as to hold that where the breach justifying forfeiture

is nonpayment of rent, the tenant may *cure* the breach after a notice to pay rent or quit is served by paying the rent due. (*Highland Plastics Inc.* v. *Enders* (1980) 109 Cal.App.3d Supp. 1, 11 [167 Cal.Rptr. 353].)[1]

■  While the authorities cited in *Highland Plastics, supra,* in support of the principle that nonpayment of rent can be cured as a matter of right by payment of the past due rent seem sufficient to uphold such a ruling (see *Walker* v. *Houston* (1932) 215 Cal. 742, 745-747 [12 P.2d 952, 87 A.L.R. 937]; *Owen* v. *Herzihoff* (1906) 2 Cal.App. 622, 623-624 [84 P. 274]), it is not necessary in the present case to go beyond the general principles of waiver to hold that landlord waived its right to obtain possession of the leased premises. The only evidence presented at trial reflected that tenant mailed money orders for the delinquent rent and for the next month's rent to landlord. No evidence suggested that landlord refused tender, returned the money orders or failed to negotiate them.[2] The landlord had the obligation of going forward with the evidence in order to prove that the money orders were not negotiated or that it took other action to insure that there was no waiver. As stated in *Morris* v. *Williams* (1967) 67 Cal.2d 733, 760 [63 Cal.Rptr. 689, 433 P.2d 697]: "Although a plaintiff ordinarily has the burden of proving every allegation of the complaint and a defendant of proving any affirmative defense, fairness and policy may sometimes require a different allocation. (See Evid. Code, § 500.) Where the evidence necessary to establish a fact essential to a claim lies peculiarly within the knowledge and competence of one of the parties, that party has the burden of going forward with the evidence on the issue although it is not the party asserting the claim. [Citations.]"

Under these circumstances, landlord has waived its right to assert a forfeiture for failure to pay the rent on the date due.

### III. CONCLUSION

The judgment of the municipal court is affirmed. Tenant will recover her costs.

Hanson (P. D.), Acting P. J., and Martin, J., concurred.

---

[1]In *Highland Plastics,* the landlord served a 30-day notice terminating a month-to-month tenancy, not relying upon any breach by the tenant. (*Id.,* at p. 6.) The appellate department found that the landlord had overcome the implied waiver arising from acceptance of rent by returning the rent checks, uncashed, to the tenant. (*Id.,* at pp. 11-12.)

[2]The "Agreed Statement on Appeal" indicates that landlord's counsel, in argument, stated that landlord had not negotiated the money orders. Since argument of counsel is not evidence (*Foster* v. *Gillette Co.* (1979) 100 Cal.App.3d 569, 575, fn. 1 [161 Cal.Rptr. 134]), no significance can be attached to such statements.

**ANDREEN, J.**—The discussion in part II of the majority opinion resolves the litigation, but since the battlelines of the parties have been drawn around the tenant's defense of retaliatory eviction, I feel we should address the matter in order to make an alternative holding.

Landlord contends that a tenant in default of rent may not assert any retaliatory eviction defenses to an unlawful detainer action ostensibly based upon said nonpayment of rent. Landlord relies in support of its position on statutory interpretation, other state cases, and its timocratic view of desirable public policy.

Civil Code section 1942.5 sets forth the general statutory rules governing assertion of the defense of retaliatory eviction by tenant.[1] Subdivision (a) of that section relates to actions taken by a tenant because the hired premises are dilapidated or otherwise untenantable. It provides a limitation upon a lessor's power to recover possession of the leased premises, raise the rent, decrease services, or cause the tenant to "quit involuntarily" in retaliation for "exercise . . . of his rights under this chapter or . . . his complaint to an appropriate agency as to tenantability of a dwelling . . . *if the lessee . . . is not in default as to the payment of his rent . . . .*" (Italics added.)[2] Subdivision (c) creates protections where habitability is not at issue, but the tenant has engaged in First Amendment activities. Unlike subdivision (a) it contains no reference to payment of rent. Landlord argues that a parallel requirement of current payment of rent must be implied as pertaining to subdivision (c) of the statute, pursuant to the principle of *ejusdem generis*.

The doctrine of *ejusdem generis*, a variation of *nocitur a sociis* (associated words), is described by 2A Sutherland, Statutory Construction (Sands 4th ed. 1973) Intrinsic Aids, section 47.17, page 103, as follows: "Where general words follow specific words in an enumeration describing the legal subject, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." (Fns. omitted.) The principle, where applicable, applies equally when the general term is followed by an enumeration of specific words. (*Ibid.*)

It is not clear precisely how landlord would apply the above described maxim of interpretation to section 1942.5, since the relevant subdivisions, (a) and (c), are not in the form of enumerated items followed by general terms, except insofar as subdivision (c) lists acts prohibited the lessor if his purpose is unlawful [". . . increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to

---

[1]All statutory references are to the Civil Code unless otherwise indicated.

[2]Section 1942.5 is set forth in its entirety in the appendix.

do any of such acts . . ."]. Rather than limit the operation of a general term by reference to specific terms associated with it, landlord would have this court import a phrase [". . . if the lessee . . . is not in default as to payment of his rent . . ."] from one subdivision [(a)] to another subdivision dealing with different rights where the phrase does not appear [(c)]. "Where the Legislature omits a particular provision in a later enactment related to the same subject matter, such deliberate omission indicates a different intention which may not be supplanted in the process of judicial construction. [Citation.]" (*Kaiser Steel Corp.* v. *County of Solano* (1979) 90 Cal.App.3d 662, 667 [153 Cal.Rptr. 546].) "The sweep of [a] statute should not be enlarged by insertion of language which the Legislature has overtly left out. [Citation.]" (*People* v. *Brannon* (1973) 32 Cal.App.3d 971, 977 [108 Cal.Rptr. 620].) While *Kaiser Steel Corp., supra,* dealt with two separate statutes, and *Brannon, supra,* involved language omitted by the Legislature during the process of enactment, the principle expressed in those cases appears equally applicable to section 1942.5, especially since subdivision (c) was added when the statute was reenacted (after repeal of a previous version) in 1979. (See *Barela* v. *Superior Court* (1981) 30 Cal.3d 244, 251 [178 Cal.Rptr. 618, 636 P.2d 582].)

The doctrine of *ejusdem generis* is a rule of construction used to carry out legislative intent, not defeat it. (*County of Placer* v. *Corin* (1980) 113 Cal.App.3d 443, 448, fn. 2 [170 Cal.Rptr. 232].) "Section 1942.5 is a remedial statute aimed at protecting tenants from certain types of abuses. It is to be 'liberally construed to effect its objectives and to suppress, not encourage, the mischief at which it was directed. . . .' [Citation.]" (*Barela* v. *Superior Court, supra,* 30 Cal.3d 244, 251.) Given the legislative intent to protect tenants from unlawful landlord conduct, interpretation of subdivision (c) of section 1942.5 so as to create a requirement for nondefault of rent would limit the protection afforded by the statute and be directly contrary to the apparent purposes of the legislation.[3]

---

[3]Because of the remedial nature of the California statute, landlord's reliance upon the analysis of *Maretz* v. *Apuzzo* (1977) 34 Conn. Supp. 594 [378 A.2d 1082], is unfounded. In that case, the superior court of Connecticut, appellate section, interpreted a Connecticut statute which provided a retaliatory eviction defense for tenants, but which concluded with the language: " 'The obligation on the part of the [tenant] to pay rent or the reasonable value of the use and occupancy of the premises . . . shall not be abrogated or diminished by any provision of this section.' " (*Id.,* at p. 1084.) The Connecticut court interpreted the quoted passage as requiring that a tenant subjected to a "summary possession" action have paid his rent before asserting the defense of retaliatory eviction created by the statute. (*Id.,* at pp. 1083-1084.) As pointed out by tenant in her brief on appeal, the Connecticut statute contains a specific reference to rent payment in the same subdivision as the retaliation language, and thus is not entirely parallel to section 1942.5, subdivision (c). More importantly, the Connecticut court specifically held that the legislative intention of the statute being construed was to maintain the tenant's obligation to pay rent or be subject to eviction. (*Id.,* at p. 1084.) The focus of section 1942.5, as identified by *Barela, supra,* is protection of the tenant, not the landlord.

Landlord asserts that an interpretation of subdivision (c) of section 1942.5 which omits the nondefault of rent requirement would "eliminate[] the need for payment of rent." Alternately, landlord contends that the trial court's action in the present case forces it to "sit idly by and allow lessees to occupy real property without paying for the privilege every time they complain of alleged racial discrimination . . . ." To the contrary, a successful defense of retaliatory eviction as provided by subdivision (c) of section 1942.5 regardless of the status of rent payment is attainable only by tenants who *prove* racial discrimination or other unlawful motivation by the landlord, as did tenant herein, for, as provided by that subdivision, "[T]he lessee shall bear the burden of producing evidence that the lessor's conduct was . . . retaliatory." If the trial court is not persuaded that the landlord has acted for an improper purpose, the defense of retaliatory eviction fails, and the landlord recovers possession.

I conclude that if a landlord takes those actions proscribed in subdivision (c) for one of the unlawful purposes mentioned therein, the fact that the tenant is in default in rent does not preclude the tenant from raising the defense of retaliatory eviction.

I turn to an examination of the common law defense of retaliatory eviction, for the trial court may have found that the landlord acted because of racial discrimination motives, rather than because the tenant took her case to the DFEH.

Landlord recognizes that a common law defense of retaliatory eviction survived and supplements the enactment of the statutory system just discussed. (*Barela* v. *Superior Court, supra,* 30 Cal.3d 244, 250-251; § 1942.5, subd. (h).) For the same reasons—protection of lessor's property interests and that other states have so found—landlord contends that a tenant must not be in default as to rent payments before she can raise the common law defense.

As was the situation regarding interpretation of section 1942.5, no reported California case has directly confronted the issue of whether the common law defense of retaliatory eviction is available to a tenant who is in default in rent. Some small implication can be derived from the fact that in *Barela, supra,* in which the tenant asserted the retaliatory eviction defense (she reported that her landlord had molested her daughter) to a notice of termination of tenancy not based on nonpayment of rent, the tenant was apparently in arrears by the time the unlawful detainer action reached trial, because the landlord, who prevailed at trial, was awarded "back rent."

(*Barela, supra,* 30 Cal.3d at pp. 247-248.)[4] More telling on this point however, is *Schweiger* v. *Superior Court* (1970) 3 Cal.3d 507 [90 Cal.Rptr. 729, 476 P.2d 97], the case which authoritatively established the common law defense of retaliatory eviction. In *Schweiger,* the tenant complained of dilapidated premises, after which the landlord raised his rent from $75 to $125 per month. (*Id.,* at p. 510.) The tenant deducted $15 from the monthly amount for repairs, and refused to pay at all the additional $50 (thus paying $60), and the landlord served a three-day quit or pay rent notice, then successfully prosecuted an unlawful detainer action. (*Ibid.*)

In holding that the tenant could raise as a defense in the unlawful detainer action the fact that the landlord was retaliating against him for exercising statutory rights, the Supreme Court recognized that "one may not exercise normally unrestricted power if his reasons for its exercise contravene public policy." (*Schweiger, supra,* at p. 516.) Citing a previous Court of Appeal case[5] which had considered unlawful detainer according to the equitable principles applicable to such a proceeding, our high court noted that " ' "equity will refuse to enforce a forfeiture at the instance of one who has obtained the strictly legal right to it by fraud, deceit, or any form of oppressive practice . . . ." ' " (*Id.,* at p. 514.) Further, " ' " . . . although [unlawful detainer] . . . is summary in principle and process ·. . . the very nature of the action . . . appeals to the equity side of the court . . . and . . . requires 'a full examination of all the equities involved to the end that exact justice be done.' " ' " (*Ibid.*)

The important principle to be derived from *Schweiger* is that the landlord's legal right to evict a tenant who has not paid rent in response to a "quit or pay rent" notice is circumscribed by the larger societal obligation

[4]Contrary to tenant's assertion, *Vargas* v. *Municipal Court* (1978) 22 Cal.3d 902 [150 Cal.Rptr. 918, 587 P.2d 714] cannot be taken as support for absence of a rent payment requirement. In that case, the tenants were given housing by their employer as a condition of employment. (*Id.,* at pp. 906-907.) The employer discharged the employees, and while the Agricultural Labor Relations Board was adjudicating the employees' claims of unfair labor practices, the employer filed an unlawful detainer action in the municipal court. (*Id.,* at p. 907.) The Supreme Court held that the municipal court had jurisdiction to hear the unlawful detainer action, but that it must permit the tenants/employees to raise as a defense that their employment relationship had been unlawfully terminated. (*Id.,* at pp. 913, 916-917.) Since the employment relationship was the equivalent of rent payments, the tenants/employees were in effect arguing that the employer was responsible for the "nonpayment" of rent. In addition, the proceedings were governed by Code of Civil Procedure section 1161, subdivision 1, which provided, in relevant part, that where the tenant occupied the premises because of his status as an employee, he would be in unlawful detainer only if the employer-employee relation was "lawfully terminated." (See *Vargas, supra,* 22 Cal.3d at p. 907, fn. 1.) Thus, if the tenant/employee could prove unlawful termination of the employment relationship, he was not unlawfully detaining the premises. Employment being the equivalent of rent payments, a victorious tenant would never have been in default.

[5]*Abstract Investment Co.* v. *Hutchinson* (1962) 204 Cal.App.2d 242 [22 Cal.Rptr. 309].

not to take adverse action against a tenant because of that tenant's exercise of rights or for some base motive such as racial discrimination. Thus, the landlord must establish that he is exercising his technical legal rights for a permissible purpose, and not in retaliation. This is codified in section 1942.5, subdivision (e), which requires the landlord to state in writing the ground upon which he seeks to recover possession *in good faith,* and establish the truth of such statement at the trial or hearing.[6]

*Barela, supra,* effectively answers landlord's contention that since unlawful detainer actions are summary proceedings, recognition of the defense of retaliatory eviction will defeat their summary nature. Whatever delay is encountered is justified by the important public policy furthered by the defense.

Landlord would have this court hold that regardless of its unlawful motivation, as found by the trial court after an adversary hearing, it should still be permitted to evict the tenant if an alternative, proper purpose—nonpayment of rent—exists. This is answered insofar as the defense rests on the statutory source of the doctrine of retaliatory eviction by subdivision (c), alluded to above. It provides an adequate procedure for litigating a landlord's claim that the eviction is not retaliatory in nature, but for a proper purpose. In the instant case, the landlord's asserted ground for instituting this unlawful detainer proceeding was for nonpayment of rent. The trial court found that the real reason was otherwise. I think that the statutory procedure for establishing that an unlawful detainer action is brought for legitimate purposes should be engrafted onto the common law source of the doctrine of retaliatory eviction. This permits a landlord to prove that the ostensible purpose of the unlawful detainer action is the actual purpose. That issue was litigated in the instant case and the landlord did not prevail, for the trial court found that the landlord's attempt at eviction was retaliatory in nature.

I find it unnecessary to determine whether the test to be applied should be the landlord's dominant purpose (Gov. Code, § 12955, subd. (f)) or a test similar to that used in employment cases (*Mt. Healthy City Board of Ed.* v. *Doyle* (1977) 429 U.S. 274, 287 [50 L.Ed.2d 471, 483, 97 S.Ct. 568]; *Martori Brothers Distributors* v. *Agricultural Labor Relations Bd.*

---

[6]The holding in *Portnoy* v. *Hill* (1968) 57 Misc.2d 1097 [294 N.Y.S.2d 278], cited by landlord, that a tenant must "do equity" by paying rent before raising the equitable defense of retaliatory eviction is not persuasive. It is the landlord, when acting for an improper purpose such as racial discrimination, who corrupts the institutions of justice by using them wrongfully to seek eviction of the tenant. In any event, the tenant in the present case came to the court with clean hands, having fully paid her rent by the time she filed her answer to landlord's complaint.

(1981) 29 Cal.3d 721, 729-730 [175 Cal.Rptr. 626, 631 P.2d 60]). Since there was no request for a statement of decision, the question cannot be reviewed.

For the above reasons,[7] landlord's invocation of the sanctity of property ownership and its vision of hordes of shoeless tenants living rent free are not persuasive justifications to read a rent payment requirement into the statutory or common law defenses of retaliatory eviction.[8]

Landlord's contention that the evidence was insufficient to support the trial court's finding of retaliatory purposes is devoid of authority, with good reason. Recitation of the rules governing sufficiency of evidence reveals that landlord's appellate counsel did not dare juxtapose his arguments with relevant case law.

Whether a landlord has acted for retaliatory purposes is a question of fact. (See *Barela* v. *Superior Court, supra,* 30 Cal.3d 244, 248, fn. 4.) It may be that ". . . [t]he record is replete with evidence that at least one member of Tenant's household was guilty of grossly abusive and uncivilized conduct," as asserted by appellate counsel for landlord, but the record is at least equally "replete" with evidence of racism, duplicity, abusiveness and harassment by landlord's agents. Landlord's argument that "[l]ogic . . . dictates that Landlord's 30-day notices were inspired by some element above and beyond inter-ethnic hostilities" flies in the face of the history of

---

[7]I find it unnecessary to consider whether the California Fair Employment and Housing Act (Gov. Code, §§ 12900-12996) is germane.

[8]Landlord's assertion that tenant may not raise the defense of retaliatory eviction because her lease terminated upon expiration of the three-day notice to quit or pay rent is unsound. As pointed out by tenant, this argument, if accepted, would eliminate any assertion of the defense in an unlawful detainer action, since by the time such action reaches trial, the tenant has already been served with a notice terminating the tenancy. Landlord's cited authorities do not support his position. *Briggs* v. *Electronic Memories & Magnetics Corp.* (1975) 53 Cal.App.3d 900 [126 Cal.Rptr. 34] involved a commercial tenant who surrendered possession in response to a three-day quit or pay rent notice, and nowhere in the opinion is it held that a tenant who remains in possession after service of such a notice holds without benefit of a lease. *Gartlan* v. *C. A. Hooper & Co.* (1918) 177 Cal. 414 [170 P. 1115], a quiet title action involving water rights, has no landlord-tenant relevance whatsoever. Finally in *Bradley* v. *Gallagher* (1973) 14 Ill.App.3d 652 [303 N.E.2d 251], the tenants asserted retaliatory eviction principles in affirmative suits against their landlord, and *failed to prove retaliation*. (*Id.,* at pp. 252-253.) The tenants refused to renew their leases, which expired according to their terms. (*Id.,* at p. 252.) Thereafter the landlord instituted unlawful detainer proceedings, and the tenants again raised the retaliatory eviction allegations. (*Id.,* at p. 253.) The trial court ruled for the landlord, and the appellate court affirmed, holding that the prior adjudication of the retaliatory allegations against the tenants was res judicata, and that since the tenants had refused to renew their leases, they were tenants at sufferance, not able to raise retaliatory eviction as a defense. (*Id.,* at pp. 254-255.) It can be seen that the critical fact in *Bradley* was that the tenants had already raised the retaliatory eviction issues *and lost* by the time the unlawful detainer action was brought.

landlord abuses that necessitated the retaliatory eviction defense. Admittedly, the landlord has a profit motive, but such has never been incompatible with bigotry and cruelty.

Assuming that the trial court believed tenant and her witnesses—an assumption consonant with the standard of review on appeal—the behavior of landlord's agents, including racial epithets, abusive language toward tenant's daughter and granddaughter and continued harassment even after a DFEH investigation and purported settlement fully supports the lower court's findings.[9]

---

### Appendix

CIVIL CODE § 1942.5. Retaliation; prohibited acts; violations; remedies; penalties

(a) If the lessor retaliates against the lessee because of the exercise by the lessee of his rights under this chapter or because of his complaint to an appropriate agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the payment of his rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services within 180 days:

(1) After the date upon which the lessee, in good faith, has given notice pursuant to Section 1942, or has made an oral complaint to the lessor regarding tenantability; or

(2) After the date upon which the lessee, in good faith, has filed a written complaint, or an oral complaint which is registered or otherwise recorded in writing, with an appropriate agency, of which the lessor has notice, for the purpose of obtaining correction of a condition relating to tenantability; or

(3) After the date of an inspection or issuance of a citation, resulting from a complaint described in paragraph (2) of which the lessor did not have notice; or

(4) After the filing of appropriate documents commencing a judicial or arbitration proceeding involving the issue of tenantability; or

(5) After entry of judgment or the signing of an arbitration award, if any, when in the judicial proceeding or arbitration the issue of tenantability is determined adversely to the lessor.

In each instance, the 180-day period shall run from the latest applicable date referred to in paragraphs (1) to (5), inclusive.

(b) A lessee may not invoke the provisions of subdivision (a) more than once in any 12-month period.

(c) It shall be unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of such acts, for the purpose of retaliating against the lessee because he or she has lawfully organized or

---

[9]It is no small irony that the parties' written lease contains the following pledge by landlord, as a member of the California Apartment Association: "We adhere to and practice the Golden Rule in all of our endeavors and conduct ourselves in a forthright and ethical manner to better the communities of which we are a part."

participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law. In an action brought by or against the lessee pursuant to this subdivision, the lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory.

(d) Nothing in this section shall be construed as limiting in any way the exercise by the lessor of his rights under any lease or agreement or any law pertaining to the hiring of property or his right to do any of the acts described in subdivision (a) or (c) for any lawful cause. Any waiver by a lessee of his rights under this section shall be void as contrary to public policy.

(e) Notwithstanding the provisions of subdivisions (a) to (d), inclusive, a lessor may recover possession of a dwelling and do any of the other acts described in subdivision (a) within the period or periods prescribed therein, or within subdivision (c), if the notice of termination, rent increase, or other act, and any pleading or statement of issues in an arbitration, if any, states the ground upon which the lessor, in good faith, seeks to recover possession, increase rent, or do any of the other acts described in subdivision (a) or (c). If such statement be controverted, the lessor shall establish its truth at the trial or other hearing.

(f) Any lessor or agent of a lessor who violates this section shall be liable to the lessee in a civil action for all of the following:

(1) The actual damages sustained by the lessee.

(2) Punitive damages in an amount of not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000) for each retaliatory act where the lessor or agent has been guilty of fraud, oppression, or malice with respect to such act.

(g) In any action brought for damages for retaliatory eviction, the court shall award reasonable attorney's fees to the prevailing party if either party requests attorney's fees upon the initiation of the action.

(h) The remedies provided by this section shall be in addition to any other remedies provided by statutory or decisional law.