[No. F015046. Fifth Dist. Mar. 11, 1993.]

DAVID B. HARRIS, Plaintiff and Appellant, v.
ATLANTIC RICHFIELD COMPANY, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of the Statement of Facts and parts I and III.

## COUNSEL

Jennings, Engstrand & Henrikson, George J. Berger, Wilson A. Schooley, Wild, Carter, Tipton & Oliver, Robert G. Carter and Gary Huss for Plaintiff and Appellant.

Arnold & Porter, Ronald C. Redcay, Matthew T. Heartney, James F. Speyer, Richard E. Woo, Crowe, Williams, Jordan, Richey & Brodersen and Daniel W. Crowe for Defendant and Respondent.

## OPINION

**BEST, P. J.**—The novel issue presented by this appeal is whether a *Tameny*[1] cause of action for breach of a contract in violation of public policy exists outside the employment situation. We conclude it does not.

### STATEMENT OF THE CASE

Appellant David B. Harris appeals from the judgment entered on his lawsuit against Atlantic Richfield Company (ARCO) and ARCO's cross-complaint against him. Appellant claimed ARCO mistreated him during his operation of an ARCO "am/pm minimarket" under a written franchise agreement by failing to repair and refurbish his unit as promised in retaliation for his failure to comply with ARCO's pricing dictates and his report of an underground gasoline leak to the authorities. He sought compensatory and punitive damages on five causes of action: (1) breach of written contract, (2) tortious breach of written contract in violation of public policy, (3) breach of oral contract, (4) bad faith denial of the existence of the oral contract, and (5) fraud.

ARCO cross-complained for compensatory and punitive damages for appellant's failure to report food sales which deprived ARCO of royalties to which it was contractually entitled.

After a four-week trial, the jury awarded damages to appellant on the first, second and fourth causes of action as follows: (1) breach of written contract ($3,550), (2) tortious breach of written contract ($2,534 compensatory, $250,000 punitive damages); and (4) bad faith denial of the existence of the oral contract ($250,000 punitive damages). The jury awarded ARCO $1,988 compensatory damages and $30,000 punitive damages on its cross-complaint.

---

[1]*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314].

After the verdict was read, the parties noted that although the jury found there was no consideration for the oral contract, they awarded $250,000 in punitive damages for ARCO's bad faith denial of that contract. The trial court struck the punitive damage award for the bad faith denial claim. Thereafter, ARCO moved for judgment notwithstanding the verdict on the cause of action for tortious breach of the written contract. The trial court granted the motion which reduced appellant's recovery against ARCO to the $3,550 awarded on his breach of written contract claim.

Appellant contends the judgment must be reversed because of trial court error. In the unpublished portion of the opinion, we agree with one of his contentions and will reverse the judgment on the fraud cause of action. In the published portion of the opinion, we conclude the court properly granted judgment notwithstanding the verdict on the tortious breach of contract claim.

STATEMENT OF FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

DISCUSSION

I. *The trial court did not err by excusing the jury and resolving the inconsistent verdict findings itself.**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *The court correctly held appellant had no cause of action for tortious breach of the written contract.*

The trial court granted ARCO's motion for judgment notwithstanding the verdict on the tortious breach of written contract cause of action. The court concluded, while the weight of authority seems to militate toward extension of the cause of action for tortious breach of contract to circumstances other than employer-employee, the necessary factual predicates were not present in this case. Specifically, the contract did not require appellant to act in a manner contrary to fundamental public policy, and the parties did not have the requisite "special relationship," one "characterized by elements of public interest, adhesion and fiduciary responsibility."

■ Appellant contends that ruling was wrong because a *Tameny* claim does not require the contract itself to impose the public policy violation nor

---

*See footnote, *ante*, page 70.

does it require a "special relationship" between the parties. ARCO submits the court made the correct ruling but for the wrong reason. ARCO urges this court to hold that a breach of contract in violation of public policy claim does not exist outside of the employment situation.

(a) *Current case law does not recognize a Tameny cause of action outside the employment situation.*

*Tameny* v. *Atlantic Richfield Co.*, *supra*, 27 Cal.3d at page 178 held that a tort action for wrongful discharge may lie if the employer conditions employment upon required participation in unlawful conduct by the employee. The *Tameny* plaintiff alleged he was fired for refusing to engage in price fixing in violation of the Cartwright Act and the Sherman Antitrust Act. (*Id.* at p. 170.)

In rejecting Atlantic Richfield's argument that an action for wrongful discharge sounds only in contract, the court stated, " ' "if the cause of action arises from a breach of a promise set forth in the contract, the action is ex contractu, *but if it arises from a breach of duty growing out of the contract, it is ex delicto.*" ' " (*Tameny, supra*, 27 Cal.3d at p. 175, italics in original.) The court reasoned that an employer's obligation not to fire an employee who refuses to commit a criminal act arises from a public policy interest in deterring criminal behavior and not from a promise, either express or implied, in the employment contract. Because the cause of action for wrongful discharge arises from a duty grounded in public policy and imposed by law, the remedy is in tort. (*Id.* at pp. 175-176, 178.)

While contract actions are created to protect the interest in having promises performed, tort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to tort relief are imposed by law, and are based primarily upon social policy, not necessarily on the will or intention of the parties. (*Tameny, supra*, 27 Cal.3d at p. 176, citing Prosser, Law of Torts (4th ed. 1971) p. 613.)

Later courts summarizing this authority have agreed, " 'the theoretical reason for labeling the discharge wrongful in such cases is not based on the terms and conditions of the contract, but rather arises out of a duty implied in law on the part of the employer to conduct its affairs in compliance with public policy . . . . The tort is independent of the term of employment.' " (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 667 [254 Cal.Rptr. 211, 765 P.2d 373]; accord, *Abreu* v. *Svenhard's Swedish Bakery* (1989) 208 Cal.App.3d 1446, 1453 [257 Cal.Rptr. 26].)

A *Tameny* claim is not limited to situations where the employment contract or the employer coerces an employee to commit an act which violates

public policy. An action for wrongful discharge will lie when the basis of the discharge contravenes a fundamental public policy. (*Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 91 [276 Cal.Rptr. 130, 801 P.2d 373]; *Blom* v. *N.G.K. Spark Plugs (U.S.A.), Inc.* (1992) 3 Cal.App.4th 382, 388, 389 [4 Cal.Rptr.2d 139].) However, the public policy must be grounded in constitutional or statutory provisions. (*Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083, 1095 [4 Cal.Rptr.2d 874, 824 P.2d 680].)

 The parties have not cited nor has our research disclosed case law recognizing a *Tameny* cause of action outside the employment relationship. Several cases suggest such cause of action does not exist. In *Abrahamson* v. *NME Hospitals, Inc.* (1987) 195 Cal.App.3d 1325 [241 Cal.Rptr. 396], a hospital pathologist claimed his contract was terminated in violation of public policy because he refused to condone allegedly improper practices at the hospital. The contract was terminable by either party without cause on 90 days' notice. (*Id.* at pp. 1326-1328.) The appellate court affirmed a grant of summary judgment for the hospital finding *Tameny* inapplicable for two reasons. First, plaintiff was an independent contractor rather than an at-will employee. Second, if the agreed termination without cause term could only be accomplished with cause—for reasons violative of public policy—the phrase "without cause" was effectively deleted from the agreement. Such an interpretation would rewrite the contract. (*Id.* at pp. 1329-1330.)

In *Premier Wine & Spirits* v. *E. & J. Gallo Winery* (9th Cir. 1988) 846 F.2d 537, plaintiff alleged defendant wrongfully terminated a distributorship contract because plaintiff refused to do an illegal act. In granting summary judgment on plaintiff's claim for tortious termination of the contract, the court noted the tort of wrongful discharge for refusal to break the law has been recognized only in the employee-employer relation. (*Id.* at p. 540.)

"Although the principle of *Tameny* is logically capable of extension beyond the employment relation, there is a consideration that makes it peculiarly apt in that setting and not in a broader context: it is normal for an employee to take directions from his employer. In the ordinary commercial world, the control of one party's actions by another is not so usual or so close." (846 F.2d at p. 540.)

Appellant contends *Johns-Manville Sales Corp.* v. *United States* (N.D.Cal. 1985) 622 F.Supp. 443 supports the principle that *Tameny* is logically capable of extension beyond the employment situation. In *Johns-Manville*, an asbestos manufacturer brought an action for indemnity from the United States for amounts paid to settle a claim with a naval shipyard worker allegedly injured by exposure to asbestos. The United States moved to

dismiss. The court held, while no California tort principles neatly fit the facts alleged in the case, Johns-Manville could state a tort claim if it showed the government forced it, under threat of civil and criminal sanctions, to supply asbestos that conformed to government specifications, and the government had knowledge, superior to that of the manufacturer, that asbestos was harmful to the safety of its workers. In addition, Johns-Manville had to show the government failed to implement safety procedures to protect its workers. (*Id.* at p. 447.)

The court reasoned that the tort duty upon which Johns-Manville's right to recover was based, resulted from the relationship of the parties. (*Johns-Manville Sales Corp.* v. *United States, supra*, 622 F.Supp. at p. 449.) "A 'wrongful act committed in the course of a contractual relationship may afford both tort and contractual relief, and in such circumstances the existence of the contractual relationship will not bar the injured party from pursuing redress in tort.' " (*Ibid.*) The court added, with reference to *Tameny*, "The purpose of imposing tort duties upon contracting parties is to implement fundamental public policy." (*Id.* at p. 450.) Moreover, "While California courts have never recognized such a duty in a buyer-seller relationship, [Johns-Manville] did not have a typical buyer-seller relationship with the government. The fundamental public policy in this case is represented in the policy against unconscionability in contractual relationships." (*Ibid.*)

The court concluded the government's duty was limited to injury Johns-Manville suffered by way of lawsuits caused by asbestos Johns-Manville was forced by law to supply to the government, not from asbestos it voluntarily contracted to supply. (*Johns-Manville Sales Corp.* v. *United States, supra*, 622 F.Supp. at p. 450.)

*Johns-Manville* does not exemplify a tort cause of action for breach of contract in violation of public policy as much as it illustrates a breach of the implied covenant of good faith and fair dealing in a "special relationship" situation. There was no allegation the government breached the contract. Rather, Johns-Manville claimed the government was obligated to indemnify it for injuries caused by Johns-Manville's compelled performance of the contract on the government's terms. As such, the case does not illustrate an extension of a *Tameny* cause of action outside the employment relationship.

Appellant also cites a line of cases which recognize the tort of wrongful eviction in retaliation for the exercise of rights under the law. (*Barela* v. *Superior Court* (1981) 30 Cal.3d 244, 252 [178 Cal.Rptr. 618, 636 P.2d 582]; *Glaser* v. *Meyers* (1982) 137 Cal.App.3d 770, 774 [187 Cal.Rptr. 242].) *Barela* states, "[i]n an analogous area of law, this court has held that an

employer cannot discharge an employee in retaliation for the employee's exercise of a legally protected right." Further, " '. . . [*Tameny*] persuasively instruct[s] us that one may not exercise normally unrestricted power if his reasons for its exercise contravene public policy.' [Citation.]" (*Barela* v. *Superior Court, supra*, 30 Cal.3d at pp. 253-254, fn. 8.)

While these cases may support, in principle, the imposition of tort liability when the basis of wrongful action against another is a violation of public policy, they cannot be cited for the broad proposition that breach of a commercial contract in violation of public policy entitles the injured party to tort relief. Thus, at present, case law does not recognize a cause of action for breach of commercial contract in violation of public policy. We therefore navigate through uncharted waters illuminated by only a few landmarks.

### (b) *Tort remedies in the context of commercial contracts*

As a general rule, California law does not authorize the award of general or punitive damages for breach of a commercial contract. The measure of damages is limited to those losses which might reasonably be foreseen by the parties. (*Quigley* v. *Pet, Inc.* (1984) 162 Cal.App.3d 877, 887 [208 Cal.Rptr. 394].) Further, Civil Code section 3294, subdivision (a), provides that exemplary damages are only available "[i]n an action for the breach of an obligation not arising from contract, . . ." Thus, punitive damages " 'are never recoverable for breach of contract, no matter how wilful or malicious, except where the wrongful act is also a tort.' " (162 Cal.App.3d at p. 887.)

The traditional goal of contract remedies is compensation of the promisee for the loss resulting from the breach, not compulsion of the promisor to perform his promises. Therefore, "willful" breaches have not been distinguished from other breaches. (Rest.2d Contracts, Introductory Note, ch. 16 p. 100.) The restrictions on contract remedies serve purposes not found in tort law. They protect the parties' freedom to bargain over special risks and they promote contract formation by limiting liability to the value of the promise. This encourages efficient breaches, resulting in increased production of goods and services at lower cost to society. (See Comment, *Reconstructing Breach of the Implied Covenant of Good Faith and Fair Dealing as a Tort* (1985) 73 Cal.L.Rev. 1291, fn. 3.) Because of these overriding policy considerations, the California Supreme Court has proceeded with caution in carving out exceptions to the traditional contract remedy restrictions. (See, e.g., *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 769 [206 Cal.Rptr. 354, 686 P.2d 1158]; *Foley* v. *Interactive Data Corp., supra*, 47 Cal.3d at pp. 694, 696.) To date, only three exceptions have been recognized.

### (i) *Independent tort exception*

The most widely recognized exception is when the defendant's conduct constitutes a tort as well as a breach of the contract. For example, when one party commits a fraud during the contract formation or performance, the injured party may recover in contract and tort. (*Godfrey* v. *Steinpress* (1982) 128 Cal.App.3d 154 [180 Cal.Rptr. 95]: knowing nondisclosure of termite damage.)

### (ii) *Tortious breach of the implied covenant*

A second exception is tortious breach of the implied covenant of good faith and fair dealing which was first recognized in insurance contracts. (*Foley* v. *Interactive Data Corp., supra*, 47 Cal.3d at p. 684.) The rationale for finding tortious conduct in insurance contracts was the existence of a "special relationship" between the parties characterized by elements of public interest, adhesion and fiduciary responsibility. (*Careau & Co.* v. *Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1395 [272 Cal.Rptr. 387].) In *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra*, 36 Cal.3d at page 769, the California Supreme Court suggested, "No doubt there are other relationships with similar characteristics and deserving of similar legal treatment." (Fn. omitted.)

Following that lead, *Wallis* v. *Superior Court* (1984) 160 Cal.App.3d 1109 [207 Cal.Rptr. 123], announced a test for defining such a relationship: (1) the parties are in inherently unequal bargaining positions; (2) there was nonprofit motivation for entering the contract such as peace of mind, security, future protection; (3) ordinary contract damages are inadequate because they do not require the party in the superior position to account for its actions and they do not make the inferior party "whole"; (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party; and (5) the other party is aware of this vulnerability. (*Id.* at p. 1118.) The *Wallis* case involved a former employee who sued when his ex-employer ceased making agreed-upon severance payments.

The *Foley* court, however, refused to extend this tort to the usual employment case, finding "the employment relationship is not sufficiently similar to that of insurer and insured to warrant judicial extension of the proposed additional tort remedies in view of the countervailing concerns about economic policy and stability, the traditional separation of tort and contract law, and finally, the numerous protections against improper terminations already afforded employees." (47 Cal.3d at p. 693.) The court suggested that any extension of tort remedies to noninsurance cases is not justified given (1) the

limited purpose and scope of contract damages, (2) the strong need in our commercial system for predictability of the cost of contractual relationships, and (3) the difficulty of formulating a workable test for distinguishing between a simple breach of contract and a "tortious" breach of the implied covenant. (*Id.* at pp. 683, 699-700.) However, the court left open the question whether "the special relationship model is an appropriate one to follow in determining whether to expand tort recovery . . . ." (*Id.* at p. 692.)

Notwithstanding *Seaman*'s suggestion that other contract relationships may be deserving of tort remedies, the noninsurance cases have concluded that the relationships at issue are not sufficiently "special" to warrant imposition of a tort remedy for breach of the implied covenant. (See cases cited at *Careau & Co.* v. *Security Pacific Business Credit, Inc., supra,* 222 Cal.App.3d at p. 1399, fn. 25, including *Martin* v. *U-Haul Co. of Fresno* (1988) 204 Cal.App.3d 396, 412 [251 Cal.Rptr. 17], no special relationship between franchiser and franchisee; and *Copesky* v. *Superior Court* (1991) 229 Cal.App.3d 678, 694 [280 Cal.Rptr. 338].)

### (iii) *Bad faith denial of contract*

Finally, in *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d 752, the court recognized a new tort in the contract arena where the breaching party attempts to avoid liability by denying, in bad faith and without probable cause, that the contract exists. (*Id.* at p. 769.) The court reasoned that such conduct goes beyond the mere breach of contract. It offends accepted notions of business ethics. Therefore, imposing tort remedies in that situation was not likely to intrude upon the bargaining relationship or upset reasonable expectations of the contracting parties. (*Id.* at p. 770.)

Some commentators have criticized the singling out of this one type of "bad faith" breach for tort remedies. (See Sebert, *Punitive and Nonpecuniary Damages in Actions Based Upon Contract: Toward Achieving the Objective of Full Compensation* (1986) 33 UCLA L.Rev. 1565, 1640-1641, 1642.) But subsequent cases have construed the *Seaman's* holding narrowly and refused to extend its rationale to the bad faith assertion of *any* defense to a contract action. (*Quigley* v. *Pet, Inc., supra,* 162 Cal.App.3d at pp. 890, 892; *DuBarry Internat., Inc.* v. *Southwest Forest Industries, Inc.* (1991) 231 Cal.App.3d 552, 567-569 [282 Cal. Rptr. 181].)

The courts justified the circumscribed liability from a policy point of view.

"If the rule were otherwise then any party attempting to defend a disputed contract claim would risk, at the very least, exposure to the imposition of tort damages and an expensive and time-consuming expansion of the litigation into an inquiry as to the motives and state of mind of the breaching party. The distinction between tort and contract actions, and their purposefully different measures of damages, would be blurred if not erased. The insult to commercial predictability and certainty would only be exceeded by the increased burden on the already overworked judicial system." (231 Cal.App.3d at p. 569.)

These concerns were shared by the Supreme Court in *Foley*:

"Despite the fact that we carefully limited our holding in *Seaman's* to instances in which a party 'seeks to shield itself from liability by denying, in bad faith and without probable cause, that the contract exists' [citation], the *Koehrer* [v. *Superior Court* (1986) 181 Cal.App.3d 1155 (226 Cal.Rptr. 820)] court expansively concluded that 'If . . . the existence of good cause for discharge is asserted by the employer without probable cause and in bad faith, that is, without a good faith belief that good cause for discharge in fact exists, the employer has tortiously attempted to deprive the employee of the benefits of the agreement, and an action for breach of the implied covenant of good faith and fair dealing will lie.' [Citation.] . . . *Koehrer* thus extended the expressly circumscribed cause of action established in *Seaman's* based on denial of the existence of the contract, to find a tort cause of action when the dispute related to a contract term. . . . By this broad stroke, made without analyzing the appropriateness of imposing tort remedies in the employment context, the *Koehrer* court broached the possibility of obtaining tort damages for the breach of any term of a contract whether for employment or otherwise." (*Foley* v. *Interactive Data Corp.*, *supra*, 47 Cal.3d at pp. 688-689.)

In summary, under current California law, tort liability has been imposed for essentially contract-based claims only where (1) the breach is also a tort, (2) the parties to the contract have the requisite "special relationship," or (3) the breach is accompanied by bad faith denial of the contract. Appellant's claim for breach of commercial contract in violation of public policy fits within none of these. Accordingly, the trial court properly granted ARCO's motion for judgment notwithstanding the verdict on that claim unless we recognize a new cause of action for tortious breach of contract in violation of public policy.

 (c) *Policy reasons for denying the claim*

The principle of *Tameny* is logically capable of extension. A cause of action for breach of contract in violation of public policy arguably is

analogous to a *Seaman's* cause of action for bad faith denial of the contract. Such conduct goes beyond the mere breach of contract and offends accepted notions of business ethics. ■ In addition, the imposition of tort remedies for such breach will not intrude upon the bargaining relationship or upset reasonable expectations of the parties because compliance with statutorily imposed duties is implied in law in every contract. (See *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d at p. 770.) Further, as an ordinary commercial contract cannot contain terms which violate fundamental public policy, the general promissory bargain cannot encompass conduct " 'contrary to public policy and sound morality.' " (Cf. *Gantt* v. *Sentry Insurance, supra,* 1 Cal.4th at p. 1101.)

■ Second, imposition of tort remedies and punitive damages on a party who breaches a contract in violation of public policy would advance the statutory and constitutional policies at issue. (Cf. *Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 694.) "[T]hreat of retribution may discourage unethical business practices." (*Quigley* v. *Pet, Inc., supra,* 162 Cal.App.3d at p. 891.)

Finally, recognizing tort liability in this context would create another class of wronged parties who would be adequately compensated for a contract breach. The most frequently cited reason for the move to extend tort remedies is the perception that traditional contract remedies are inadequate to compensate for certain breaches. (162 Cal.App.3d at p. 891; and see, Putz & Klippen, *Commercial Bad Faith: Attorney Fees—Not Tort Liability—Is the Remedy for "Stonewalling"* (1987) 21 U.S.F. L.Rev. 419, 470-471.)

On the other hand, stronger public policy reasons militate against our recognition of a new tort. First, as set out above, the distinction between tort and contract is well grounded in common law and divergent objectives underlie the remedies created in the two areas. (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 683.) Courts have traditionally awarded damages for breach of contract to compensate the aggrieved party rather than to punish the breaching party. This predictability of the consequences of actions related to contracts is important to commercial stability. (*Ibid.*) Proposals to extend tort remedies to commercial contracts create the potential of turning every breach of contract dispute into a punitive damage claim. (Putz & Klippen, *Commercial Bad Faith, supra,* 21 U.S.F. L.Rev. at p. 481.) The plaintiff's bar has shown admirable creativity in crafting a given set of facts into a newly recognized tort. This practice, combined with the vast array of statutes providing fertile ground for public policy violations, produces a potential Pandora's box.

Second, our Supreme Court has advised against judicial activism where an extension of tort remedies is sought for a duty whose breach previously has

been compensable by contract remedies. (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d at p. 769; *Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at pp. 683, 690, 694, 696.)

Finally, where significant policy judgments affecting commercial relationships are implicated, the determination is better suited for legislative decision making. The imposition of tort remedies for "bad" breaches of commercial contracts is a substantial deviation from the traditional approach which was blind to the motive for the breach. Moreover, tort remedies for the nonbreaching party are but one among many solutions posited to remedy the problem of adequately compensating the wronged promisee for such breaches. (See, e.g., 5 Corbin on Contracts (1992 pocket pt.) § 1077, pp. 170-183.) Determining the appropriate remedy for breach of commercial contract in violation of public policy is no less troubling than determining the appropriate remedy for breach of the implied covenant of good faith and fair dealing in the employment context. (See *Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 696.) Only the Legislature is qualified to make the significant policy judgments affecting commercial relationships required to justify expansion of tort remedies into an area governed by contract law.

"Legislatures, in making such policy decisions, have the ability to gather empirical evidence, solicit the advice of experts, and hold hearings at which all interested parties may present evidence and express their views . . . ." (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 694, fn. 31.) Thus, the more prudent approach is to defer to the Legislature to address the appropriate relief to remedy this type of breach.

Accordingly, there are sound public policy reasons for not recognizing a new tort of breach of commercial contract in violation of public policy. Therefore, the trial court properly granted judgment notwithstanding the verdict on appellant's second cause of action.

III. *The judgment must be reversed because the court excluded a memorandum summarizing statements made by an ARCO representative to a third party that ARCO wanted its dealers to sell below cost and did not care if it was breaking the law.**

. . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 70.

## DISPOSITION

The judgment is reversed as to the fifth cause of action, and the cause remanded for retrial on that cause of action only. The judgment is affirmed in all other respects. The parties to bear their own costs on appeal.

Stone (W. A.), J., and Vartabedian, J., concurred.

A petition for a rehearing was denied April 8, 1993, and respondent's petition for review by the Supreme Court was denied May 27, 1993.