Sam ROBINSON, Plaintiff,

v.

LADD FURNITURE, INC., a North Carolina Corporation, and American Drew, a North Carolina Corporation, Defendants.

No. 2:92CV00273.

United States District Court, M.D. North Carolina, Greensboro Division.

Dec. 21, 1994.

fornia public policy against age discrimination, and wrongful termination in violation of North Carolina public policy against age discrimination. Defendants contend that Plaintiff was an independent contractor and cannot prevail on any of these claims. Having reviewed the positions of all parties, the court will grant Defendants' Motion for Summary Judgment.

## I. BACKGROUND

American Drew, a division of LADD Furniture, Inc., is a furniture manufacturer with its principal place of business in High Point, North Carolina. In 1973, Plaintiff Sam Robinson was hired by American Drew as a sales representative for southern California, southern Nevada, and Arizona. Originally, Plaintiff's employment was governed by an oral contract; however, in 1985, and again in 1990, Plaintiff signed an Independent Sales Representative Agreement ("Agreement") with American Drew. Pursuant to the Agreement, either party could terminate employment upon thirty days written notice. (Agreement ¶ 113.) On September 6, 1991, American Drew notified Plaintiff that his employment would be terminated on October 6, 1991. Plaintiff was 69 years old when he was fired.

While working for American Drew, Plaintiff was paid a commission based on his sales performance. (Agreement ¶ 1.) This commission was not paid directly to Plaintiff, but was instead paid to Sam Robinson, Inc. ("Corporation"), a corporation formed by Plaintiff before he was hired by American Drew. That Corporation then paid Plaintiff pursuant to an employment agreement between Sam Robinson, Inc. and Plaintiff. During the early years of Plaintiff's employment with American Drew, Plaintiff sold furniture for other manufacturers, and commissions on the sales of this furniture were also paid to the Corporation and, in turn, to Plaintiff.

Sam Robinson, Inc. provided Plaintiff with a company car and telephone, while American Drew furnished sales photographs and other promotional materials. American Drew did not provide health insurance or retirement benefits; these were both provid-

Richard Lee Rainey, Womble Carlyle Sandridge & Rice, Winston–Salem, NC, Andrew D. Morrison, Beverly Hills, CA, for plaintiff.

F. Joseph Treacy, Jr., Petree Stockton, Charlotte, NC, Penni Pearson Bradshaw, Louis Whittier Doherty, Petree Stockton, Winston–Salem, NC, for defendants.

*MEMORANDUM OPINION*

OSTEEN, District Judge.

This matter comes before the court on Defendants LADD Furniture, Inc. ("LADD Furniture") and its unincorporated division, American Drew's Motion for Summary Judgment. This dispute focuses on the termination of Plaintiff Sam Robinson's employment as a sales representative for American Drew, a manufacturer of furniture. In the Complaint, Plaintiff alleges violation of the California Fair Employment and Housing Act, wrongful termination in violation of Cali-

ed by the Corporation. American Drew did not withhold federal or state income taxes or social security taxes. Moreover, American Drew did not pay premiums for workers' compensation or unemployment benefits on behalf of Plaintiff.

Plaintiff set his own working hours and working conditions, but was required by Defendants to attend the Furniture Markets held in San Francisco, California, and High Point, North Carolina. While at the Markets, Defendants controlled Plaintiff's working hours and conditions, requiring Plaintiff to work from 8:00 a.m. (later changed to 7:30 a.m.) to 6:00 p.m. Before the Markets, Plaintiff was required by Defendants to attend training sessions. In addition, Defendants would send supervisors two or three times a year to escort Plaintiff on his sales visits. Plaintiff was also required to update the company on his sales performance once a week. During his last year with American Drew, sales in Plaintiff's territory had declined drastically. Therefore, American Drew asked Robinson to plan his visits to customers two weeks in advance and prepare a sales report of the plan, although this requirement was never fulfilled.

Plaintiff first filed a complaint in California state court, alleging wrongful termination in contravention of California public policy and for violation of the Unruh Act.[1] Defendant then removed the case to federal court based on diversity of citizenship and filed a motion to dismiss, pursuant to rule 12(b)(3) (improper venue) and 12(b)(6) (failure to state a claim) of the Federal Rules of Civil Procedure. The United States District Court for the Central District of California dismissed the claim for violation of the Unruh Act because this Act does not apply to claims of discrimination in employment either as an independent contractor or as an employee. The court also granted the motion to dismiss the other claims, holding that the forum selection clause in the Agreement granted the North Carolina courts proper venue. Plaintiff then filed a complaint in the United States District Court for the Middle District of North Carolina, alleging wrongful termination in contravention of California public policy, violation of the California Fair Employment and Housing Act, and breach of contract. This court granted Defendants' Motion to Dismiss, holding that the choice of law clause in the Agreement provided that North Carolina law governed any contract dispute, and as such, Plaintiff's claims based on California law should be dismissed. The cause of action based on the breach of an oral employment agreement was also dismissed as a result of an integration clause in the Agreement. On appeal, the Court of Appeals for the Fourth Circuit, in an unpublished opinion, affirmed the dismissal of the breach of contract claim, but reversed the decision of the district court on the first two claims, holding that these claims did not sound in contract. Thus, the contractual choice of law provision in the Agreement was inapplicable. Rather, North Carolina choice of law principles should govern the issue, and the case was remanded. On remand, Plaintiff filed an amended complaint alleging violation of the California Fair Employment and Housing Act and for wrongful termination under California law and, in the alternative, under North Carolina law. The parties moved to bifurcate discovery on the issue of whether Plaintiff was an employee or an independent contractor because both parties agreed that if Robinson were an independent contractor, then all claims should be dismissed. The parties are now before the court on a motion for summary judgment based solely on the issue of whether Plaintiff Sam Robinson was an independent contractor. Plaintiff has also moved to file a second amended complaint that adds a claim for violation of the Age Discrimination in Employment Act ("ADEA"). 29 U.S.C. §§ 621–634 (1985).

## II. DISCUSSION

Summary judgment is appropriate in those cases where it is established through pleadings, affidavits, depositions, and other discovery documents that there exists no genuine issue of material fact and the moving party is

---

1. The Unruh Act prohibits business establishments from discriminating "in the context of the supply of services or facilities to clients, patrons, or customers." *Gauvin v. Trombatore*, 682 F.Supp. 1067, 1073 (N.D.Cal.1988).

entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Thus, it is the burden of the moving party to show the court that no material factual issues exist for trial. Of course, the court must draw any permissible inference from the underlying facts as established in the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); *Pulliam Inv. Co. v. Cameo Prop.*, 810 F.2d 1282, 1286 (4th Cir.1987).

When the moving party has carried its burden, the nonmoving party must come forward with evidence which shows more than some "metaphysical doubt" that genuine and material factual issues exist. *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. A mere scintilla of evidence presented by the nonmoving party is insufficient to circumvent summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. Rather, the nonmoving party must convince the court that upon the record taken as a whole a rational trier of fact could find for the nonmoving party. *Id.* at 248–49, 106 S.Ct. at 2510–11. More specifically, "the court can determine that a trial is unnecessary only if either the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315–16 (4th Cir.1993).

■ In this case, Defendants have moved for summary judgment on the issue of whether Plaintiff was an independent contractor or an employee. The parties have chosen not to address the choice of law issue which involves deciding whether to apply the substantive law of North Carolina or California,[2] contending that if Plaintiff is an independent contractor, then there is no claim under either law. However, the choice of law issue must be indirectly addressed because this court must decide what standard to apply in determining whether Plaintiff is an independent contractor or an employee, i.e., either the standard under North Carolina law or California law.[3] We find that the result is the same under either the North Carolina or California standard, and both standards will be discussed.

### A. California Fair Employment and Housing Act

■ Plaintiff's first claim for relief alleges violation of the California Fair Employment and Housing Act. This statute makes it "an unlawful employment practice for an employer to refuse to hire or employ, or to discharge, dismiss, reduce, suspend, or demote, any individual over the age of 40 on the ground of age." Cal.Gov't.Code § 12941. In *Lumia v. Roper Pump Co.*, 724 F.Supp. 694 (N.D.Cal.1989), a California district court held that this statute did not apply to an independent contractor stating that:

> [F]or purposes of the California Fair Employment and Housing Act, "[e]mployee does not include an independent contractor as defined in Labor Code section 3353." Cal.Admin.Code tit. 2, § 7286.5(b)(1).

> [And] Labor Code section 3353 defines an independent contractor as one:

>> [W]ho renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished. Cal.Lab.Code § 3353.

*Id.* at 697–98.

In *Lumia*, the plaintiff was hired by Roper Pump Company, a pump manufacturer, as a district sales representative for the western states. There were several agreements executed between these parties, and the final

---

2. A federal court sitting in diversity must apply the substantive law of the forum state. *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Simms Inv. Co. v. E.F. Hutton & Co.*, 688 F.Supp. 193 (M.D.N.C.1988). Thus, North Carolina choice of law principles for torts would determine whether California or North Carolina law governs the claims for wrongful discharge.

3. If North Carolina law were applicable, then the two claims for relief based on California law should be dismissed, and if California law were applicable, the claims based on North Carolina law should be dismissed.

agreement stated that Georgia law governed the interpretation of the terms of the contract, that either party could terminate the agreement with 60 days notice and that the plaintiff was an independent contractor. *Lumia,* 724 F.Supp. at 695. In July 1986, the plaintiff was given 60 days notice that his contract with Roper would be terminated effective September 1986. Lumia was 60 years old when he was fired, and in 1988, he filed a lawsuit alleging, *inter alia,* violation of the California Fair Employment and Housing Act. The United States District Court for the Northern District of California held that Lumia was an independent contractor and granted summary judgment for Roper on the statutory claim. In making this determination, the court stated that:

> The standard in California for determining if an employee-employer or independent contract relationship exists is whether the individual or the employer controls "the manner and means by which the work is to be performed." *Societa Per Azioni De Navigazione Italia v. City of Los Angeles,* 31 Cal.3d 446, 183 Cal.Rptr. 51, 645 P.2d 102 (1982). "If control may be exercised only as to the result of the work and not the means by which it is accomplished, an independent contractor relationship is established." *Societa Per Azioni,* 31 Cal.3d at 458, 183 Cal.Rptr. 51, 645 P.2d 102. Other factors the California courts look to when making this decision include: whether or not the one employed is engaged in a distinct occupation; skill required for the occupation; whether the workman supplies the instrumentalities, tools and the place of work; the length of time the person is employed; the method of payment, by time or result; whether or not the work is part of the regular business of the employer; what is the intent or belief of the parties; and whether the principal is or is not in business. *Tieberg v. Unemployment Ins. Appointment Board,* 2 Cal.3d 943, 950 n. 4, 88 Cal.Rptr. 175, 471 P.2d 975 (1970). These factors are secondary to the prime consideration of who controls the manner and means by which the work is accomplished.

*Id.* at 696. In applying these factors, the court found that Lumia had control over the manner in which orders were solicited from customers. In addition:

> [P]laintiff was paid on a commission basis. Roper set sales quotas for plaintiff, but the extent of Lumia's compensation depended mainly on his skill and diligence. He set up his office operations, decided what hours he worked and what type, if any, of support staff he utilized. Lumia paid his own overhead expenses. Lumia was permitted to use defendant's name to solicit business, but could not use the trade name or bind Roper in any other manner. While under contract with Roper, Lumia was party to similar sales agreements with other manufacturers. This was permitted under his contract with Roper as long as Lumia did not contract with their direct competitors. Moreover, paragraph 10 of the March 10, 1986 agreement expressly states that "the District Sales Representative is carrying out this Agreement as an independent contractor and not as an employee or agent of Roper."

*Id.* at 697. Thus, the court concluded that the plaintiff was an independent contractor and granted summary judgment for the defendant.

In the case at bar, during the weeks Plaintiff Robinson was at the Market, he was under the supervision and control of Defendants; however, during the rest of the year, Robinson controlled the manner in which he solicited orders for furniture. He was paid on a commission basis, indicating that his compensation depended solely on his skill and diligence. Plaintiff decided his own hours and hired his own support staff. There were also periods when Plaintiff did not work exclusively for American Drew. In addition, the Agreement explicitly states that Plaintiff is an independent contractor. For these reasons and those detailed in Section D of this memorandum opinion, the court finds that Plaintiff was an independent contractor. Accordingly, Defendants' Motion for Summary Judgment will be granted as to Plaintiff's claim for violation of the California Fair Employment and Housing Act.

**B. Wrongful Termination in Violation of California Public Policy**

Plaintiff's second claim for relief is a claim for wrongful termination in violation

of the public policy of California. *See, e.g., Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980). This claim is only recognized in the employee/employer context and, as such, does not apply to independent contractors. *Harris v. Atlantic Richfield Co.*, 14 Cal.App.4th 70, 17 Cal.Rptr.2d 649 (5th Dist.1993). As discussed in detail in Section D, this court finds that Robinson was an independent contractor. Accordingly, summary judgment will be granted for Defendants on the claim for wrongful termination in violation of California public policy.

### C. Wrongful Termination in Violation of North Carolina Public Policy

■ Plaintiff's third claim for relief is a claim for wrongful termination in violation of the public policy of North Carolina. *See, e.g., Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 416 S.E.2d 166 (1992); *Coman v. Thomas Mfg. Co., Inc.*, 325 N.C. 172, 381 S.E.2d 445 (1989); *Sides v. Duke Hospital*, 74 N.C.App. 331, 328 S.E.2d 818 (1985). In determining the parameters of this claim, the North Carolina Supreme Court has directed the lower courts to follow the principles established in federal discrimination cases. *North Carolina Dep't of Correction v. Gibson*, 308 N.C. 131, 136, 301 S.E.2d 78, 82 (1983); *North Carolina Dep't of Correction v. Hodge*, 99 N.C.App. 602, 610, 394 S.E.2d 285, 289 (1990). In the context of age discrimination, the applicable federal law is the Age Discrimination in Employment Act. The Fourth Circuit Court of Appeals has held that "[a] plain reading of the ADEA indicates that an 'individual' only has a cause of action under this provision if he is an 'employee' at the time of his termination." *Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 980 (4th Cir.1983). Likewise, this court finds that North Carolina courts would hold that an independent contractor does not have a claim for wrongful

termination in violation of the public policy of North Carolina against age discrimination.

■ In *Garrett*, the plaintiff was a salesman for Phillips Mills, Inc., an upholstery fabrics manufacturer. At the age of 57, Garrett was terminated, and he filed a lawsuit in the United States District Court for the Middle District of North Carolina, alleging age discrimination in violation of the ADEA. After Garrett's testimony at trial, the court dismissed his claim, finding that Garrett was an independent contractor and not an employee. On appeal, the Fourth Circuit Court of Appeals affirmed, holding that a hybrid of the "right to control" test[4] and the "economic realities" test[5] should be utilized in determining whether Garrett was an employee or an independent contractor. The court stated that:

[C]ontrol is still the most important factor to be considered, but it is not dispositive. Other important considerations include:

(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used in the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; *i.e.*, by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

---

4. This common law standard emphasizes "the importance of the employer's control over the individual." *Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 981 (4th Cir.1983) (citing *Cobb v. Sun Papers, Inc.*, 673 F.2d 337 (11th Cir.), *cert. denied*, 459 U.S. 874, 103 S.Ct. 163, 74 L.Ed.2d 135 (1982)).

5. This test is often used with remedial legislation to replace the rigid "right to control" test. *Bartels v. Birmingham*, 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947). This test focuses on the "economic realities" of the relationship because "in the application of social legislation employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Id.* at 130, 67 S.Ct. at 1550.

*Garrett,* 721 F.2d at 982 (citation omitted) (quoting *Spirides v. Reinhardt,* 613 F.2d 826, 832 (D.C.Cir.1979)); *see also EEOC v. Zippo Mfg. Co.,* 713 F.2d 32 (3d Cir.1983) (quoting and following *Spirides* ).

In applying these factors, the Fourth Circuit explained that the written agreement between Garrett and Phillips states that Garrett is an independent contractor and not an employee, and this fact was confirmed by the working relationship between the parties. The court expounded that:

> Garrett was largely independent of Phillips' control. He was not required to account for his daily activities. He was not expressly prohibited from selling products of other companies. Garrett chose his own working hours, and his method of selling was essentially unsupervised. Although he was evaluated by company management, he rejected most of Phillips' suggestions for change in his sales approach. He paid his own operating expenses. Garrett's opportunity for profit was unlimited, being governed solely by his sales performance.... The relationship was treated by both Phillips and Garrett as that of an independent contractor for tax purposes. Garrett was responsible for withholding his own income and social security taxes. He filed his tax return as a self-employed individual, not as an employee. Garrett personally established a Keogh Retirement Plan which, by its terms, is limited to self-employed individuals.[6]

*Garrett,* 721 F.2d at 982.

■ In the case at bar, this court finds that Robinson was an independent contractor

6. *See also EEOC v. Zippo Mfg. Co.,* 713 F.2d 32 (3d Cir.1983) (holding that a sales representative for a manufacturer of cigarette lighters and accessories was an independent contractor when the representative was paid on a commission basis, was not reimbursed for expenses, did not receive any insurance or paid vacations, and was not treated as an employee for tax purposes); *Hickey v. Arkla Indus., Inc.,* 699 F.2d 748 (5th Cir.1983) (holding that a sales representative for a manufacturer of gas grills and gas lights was an independent contractor when the representative was paid on a commission basis, established a separate corporation to receive commission checks, and was not treated as an employee for tax purposes).

for the reasons discussed in Section D and grants Defendants' Motion for Summary Judgment as to Plaintiff's claim for wrongful termination in violation of North Carolina public policy against age discrimination.

■ Plaintiff has filed a Motion for an Order Permitting Filing of Second Amended Complaint. The proposed amended complaint adds a claim for violation of the ADEA, but the ADEA does not apply to independent contractors. *Garrett,* 721 F.2d at 980. As such, the amended complaint "would be a futile gesture." *English v. General Electric Co.,* 765 F.Supp. 293, 297 (E.D.N.C.1991), *aff'd,* 977 F.2d 572 (4th Cir. 1992). Accordingly, Plaintiff's Motion for an Order Permitting Filing of Second Amended Complaint will be denied.

### D. Factual Analysis

The Agreement between Plaintiff Robinson and American Drew states that:

> Representative [Robinson] is and shall be during the term of this Agreement ... an independent contractor and not an employee or other agent of the Company. In this regard, Representative shall choose his own working hours and shall select the specific times when he will call on accounts in the territory.

(Agreement ¶ 111.) The Agreement also required Robinson to "devote his attention and best efforts to the representation of the Company" and to "[v]igorously promote the sale of the Company's furniture." (Agreement ¶ (3)(a), (b).) In addition, the Agreement provided for salary on a commission basis

In *Gottlieb v. LADD Furniture, Inc.,* No. CIV. A. 91–0351, 1992 WL 174617 (E.D.Pa. July 14, 1992), plaintiff Gottlieb sued Lea Industries, another division of LADD Furniture, for violation of the ADEA. The United States District Court for the Eastern District of Pennsylvania granted summary judgment for defendant, finding that plaintiff was an independent contractor. The court reasoned that Gottlieb was paid on a commission basis, paid his own expenses, and was treated as an employee for tax purposes. Although the facts indicated that Lea Industries required Gottlieb to follow general company guidelines and to have a "game plan" detailing how certain goals would be achieved, the court held that viewing the evidence as a whole Gottlieb was not an employee. *Id.* at *5.

and allowed either party a right of termination "with or without cause, for any reason, by giving the other thirty (30) days advance written notice." (Agreement ¶¶ 1, 113.)

The relationship between Robinson and American Drew indicated that Plaintiff's status as an independent contractor was not merely the creation of the Agreement. Robinson did decide which dealers to contact in a given week and what furniture to sell. He set his own working hours, vacation time, and sick leave. During his early years with American Drew, Robinson worked as a sales representative for other manufacturers.[7] Robinson also executed an agreement with his Corporation whereby he became an employee of Sam Robinson, Inc., not American Drew. On his tax returns, he stated that he was an employee of Sam Robinson, Inc., indicating that he believed he was not an employee of American Drew.

Robinson's salary was a commission based on his sales performance, and American Drew paid this commission to Sam Robinson, Inc. ("Corporation"), not to Robinson directly. Robinson's Corporation paid Robinson's expenses and provided health insurance in the form of the "Sam Robinson, Inc., Health and Accident Plan." The Corporation established a retirement plan (Money Purchase Pension Plan) because one was not provided by Defendants. The staff that helped Robinson sell furniture was employed by his Corporation. Robinson's equipment was not provided by American Drew. Instead, a car and phone were supplied by the Corporation, although American Drew did provide Robinson with promotional material and business cards.

American Drew did not pay any premiums for workers' compensation on Robinson, and American Drew did not withhold federal or state income taxes or social security taxes. American Drew did not provide Robinson with a W-2 form. Defendants furnished Sam Robinson, Inc. with annual 1099's for some years and no tax reports in other years. Sam Robinson, Inc. provided Robinson with a W-2 form each year, indicating Robinson's annual income. The Internal Revenue Service performed an audit of American Drew and determined that Robinson was correctly classified as an independent contractor for tax purposes. Indeed, Robinson had formed his Corporation "to take advantage of certain tax regulations that would allow [him] to save money." (Robinson's Dep. at 15.) These tax advantages are not available to employees.

In addition to these facts, there are other factors which must be considered in determining whether Plaintiff was an independent contractor or an employee. Plaintiff worked for American Drew for eighteen years. During the periods that Plaintiff was at the Market, American Drew exerted control over his working hours and conditions. There were also training sessions at each Market that Defendants required Plaintiff to attend. When not attending the Market, Robinson would make a weekly phone call to update American Drew regarding business in his territory, and American Drew would send supervisors to visit Plaintiff two or three times a year. During his last year with American Drew, sales by Robinson had dropped by about fifty percent, and consequently, he was asked to prepare a weekly report with a daily listing of planned calls, but these reports were never completed. These facts, although indicative of close supervision for brief periods, are insufficient to establish an employee/employer relationship.

In balancing all the factors discussed above, this court concludes that Robinson was an independent contractor. Accordingly, this court will grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion for an Order Permitting Filing of Second Amended Complaint.

A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

---

7. There is a factual dispute as to whether American Drew asked Robinson not to represent other manufacturers in his last few years of employment. The Agreement states that Plaintiff could represent other companies, but must advise American Drew in writing before taking another line. (Agreement ¶ 3(i).) However, Robinson contends that he was told he had to work exclusively for American Drew.