[No. D008121. Fourth Dist., Div. One. Mar. 26, 1990.]

LEONARD MURRAY et al., Plaintiffs and Appellants, v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant
and Respondent.

**COUNSEL**

Bruce Cornblum for Plaintiffs and Appellants.

Parkinson, Wolf & Leo, Wolf & Leo, Jeffrey H. Leo, Douglas R. Irvine, Horvitz & Levy, Barry R. Levy and Mitchell C. Tilner for Defendant and Respondent.

**OPINION**

**WIENER, Acting P. J.**—In January 1986, plaintiffs Leonard and Mary Murray discovered a water leak in their home caused by a break in a one-half inch conventional L grade copper pipe carrying hot water from the hot water heater in their garage to a bathroom in the house. The pipe was about 23 inches below the concrete slab floor. As a result of the leak, the ground underneath the pipe settled, causing a crack in the slab perpendicular to the pipe.

Experts agreed that the leak was caused by a process known as electrolysis, precipitated when the pipe was exposed to a combination of moisture and acidic soil. (See generally *Walnut Creek Elec.* v. *Reynolds Constr. Co.*

(1968) 263 Cal.App.2d 511, 514 [69 Cal.Rptr. 667].) One of the experts described electrolysis as involving "a chemical reaction of dissimilar metals in the presence of an acid solution. The transfer of electrons from one metal to another relieves that one metal of a portion of its thickness and structural integrity as evidenced by accelerated corrosion." The process resulted first in a pinhole and later in a serious rupture of the pipe.

The Murrays presented a claim for damages to defendant State Farm Fire and Casualty Company with whom they carried homeowner's insurance. Although reserving its right to contest coverage, State Farm agreed to pay for replacing the damaged section of pipe but balked at the rerouting and more extensive repairs desired by the Murrays. Dissatisfied with State Farm's handling of their claim, the Murrays first sought appraisal under the terms of the policy to determine the reasonable cost of repairing the damage. State Farm participated in the appraisal hearing making it clear they disputed the Murrays' assertion of coverage. An umpire determined that if the loss was a covered loss, the reasonable cost of repair was $19,441 plus miscellaneous amounts to cover the Murrays' living expenses for the period of time they would have to leave the house during repair.

When State Farm persisted in its contention that the loss was not covered under the terms of the policy, the Murrays filed this action seeking general and punitive damages on contract and tort theories. State Farm successfully moved for summary judgment relying on certain exclusionary provisions of the policy.

## DISCUSSION

In challenging the summary judgment on appeal, the Murrays have attempted to rebut the numerous alternative theories offered by State Farm to demonstrate the lack of coverage. We begin by addressing State Farm's contention that the policy exclusion for "deterioration" precludes coverage for replacement of the corroded pipe. We then consider the Murrays' additional argument that even if the damaged pipe is not a covered loss, State Farm is obligated to reimburse them for the cost of tearing out the cement slab to reach the damaged pipe. Ultimately, we conclude the policy provides no coverage for any of the costs incurred by the Murrays.

Under "COVERAGE A—DWELLING" IN "SECTION I—LOSSES INSURED" of their State Farm policy, the Murrays' house was covered for actual physical loss up to $80,200 unless the risk was excluded under "SECTION I—LOSSES NOT INSURED." State Farm's summary judgment motion directed the court to the policy's exclusions contained in paragraphs

1(e) and 1(f). Paragraph 1 excluded coverage "for loss to the property described in Coverage A either consisting of, or directly and immediately caused by one or more of the following:

". . . . . . . . . . . . . . . . . . . .

"e. leakage or seepage of water or steam unless sudden and accidental from a: . . . plumbing system, including from or around any shower stall or other shower bath installation, bath tub or other plumbing fixture. If loss is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped.

"f. wear, tear, marring, deterioration, inherent vice, latent defect and mechanical breakdown . . . ."

". . . . . . . . . . . . . . . . . . .

"However, we do insure for any ensuing loss from items a through j, unless the loss is itself a Loss Not Insured by this Section."

## I

The Murrays concede that exclusion 1(f) precludes coverage for claims involving wear, tear and deterioration. ▪ They acknowledge that any different decision would convert their homeowner's insurance policy into a maintenance agreement, contrary to the fundamental rule of construing insurance policies which requires that " '[c]ontracts of insurance . . . be viewed in the light of their general objects and purposes, . . . [Citation.]' " (*Insurance Co. of North America* v. *Electronic Purification Co.* (1967) 67 Cal.2d 679, 689 [63 Cal.Rptr. 382, 433 P.2d 174].) The Murrays argue, however, that the exclusion should be interpreted to apply only to "normal" deterioration of the sort a homeowner can predict and plan for. Here, they suggest, the expert declarations submitted in opposition to the motion for summary judgment at least created an issue of fact as to whether 17 years is the "normal" life for a copper pipe.[1] Accordingly, they assert, summary judgment was inappropriate.

---

[1] In opposing the summary judgment motion, the Murrays submitted the declaration of Andrew Bello who said that grade L copper pipe should have lasted "the life of the house without malfunctioning or leaking . . . [And] the hot water pipe in the Murrays' home should [have] last[ed] at least 45-50 years." In addition, their expert, Ron F. Doss, declared

■ We can assume the correctness of the Murrays' premise, i.e., that the normal useful life of copper pipe is considerably longer than 17 years. Nonetheless, the Murrays' proffered interpretation of the exclusion does not withstand scrutiny. We appreciate the possibility that there may be cases which would call into question the exact parameters of the term "deterioration." We can envision situations in which a homeowner suffers damage which is not instantaneous but nonetheless occurs over a sufficiently short period of time that it could not be characterized as deterioration. This is not such a case. According to one of the Murrays' own experts, the electrolysis process which caused the breakdown of the copper pipe "takes place over a fairly long period of time." He estimated the pipe may have begun leaking a year before the leak was discovered.

These facts lead inevitably to the conclusion that the copper pipe failed as a result of deterioration. The Murrays' homeowners' policy expressly excludes coverage for losses resulting from deterioration. The exclusion is not limited to deterioration which is usual, ordinary or normal.

The Supreme Court considered a similar question of policy interpretation in *Sabella* v. *Wisler* (1963) 59 Cal.2d 21 [27 Cal.Rptr. 689, 377 P.2d 889]. There, the insurance policy excluded coverage for loss caused by "wear and tear; deterioration; . . . *settling, cracking, shrinkage, or expansion of pavements, foundations, walls, floors, or ceilings . . .*" (*Id.* at p. 26, italics in original.) Unknown to the homeowners, their home had been constructed on improperly compacted fill material. The soil became more unstable when water from a broken sewer line infiltrated the ground near and below the foundation of the house. After three months, the ground subsided causing various parts of the house to settle as much as seven inches. (*Ibid.*) In an action by the homeowners against their insurer, the Supreme Court held that the language of the insurance policy fairly apprised a reasonable reader that subsidence damage was intended to be excluded. (*Id.* at p. 30.)

The court's analysis in distinguishing *Prickett* v. *Royal Ins. Co. Ltd.* (1961) 56 Cal.2d 234 [14 Cal.Rptr. 675, 363 P.2d 907, 86 A.L.R.2d 711] is particularly relevant to the issue here: "In *Prickett*, the policy excluded coverage for 'normal settling,' and we held that the sudden drop of up to 12 inches of portions of a house due to improperly compacted fill beneath the house was not 'normal settling' within the terms of that policy. (See 56 Cal.2d at p. 238.) But since the instant policy excludes merely 'settling,'

the copper pipe in their house "could be expected to operate without difficulty, problems or rupture for a period of approximately 50 years."

without use of qualifying adjectives such as 'normal' or 'usual,' the policy herein does indicate an intent to exclude any and all loss caused by settling, and settling did occur herein." (*Sabella, supra*, 59 Cal.2d at p. 31.)[2]

Similarly here, the Murrays' policy does not limit the "deterioration" exclusion by using adjectives such as "normal" or "usual." A reasonable insured could therefore not expect coverage for damage to hot water pipes caused by any type of deterioration.

## II

Since the only damage identified by the Murrays relates to the corroded pipe, our conclusion on the applicability of the deterioration exclusion would normally end our analysis. Here, however, the "ensuing loss" provision which follows exclusions (a) through (j) cautions that we not prematurely abort our inquiry.[3] That clause of the policy provides the homeowner with coverage for losses which flow from an excluded loss, as long as the "ensuing" loss is not also specifically excluded. Thus, the exclusion for "deterioration" means that State Farm is not obligated to compensate the Murrays for their corroded water pipe. If, however, the Murrays suffered consequential loss as a result of the corroded pipe and that consequential or "ensuing" loss is not excluded under another provision of the policy, the loss is covered.

The Murrays argue that the break in the pipe and leakage of water was "sudden and accidental" within the meaning of paragraph 1(e) and the

---

[2] In another portion of the *Sabella* opinion, the Supreme Court concluded there was coverage because the "efficient proximate cause" of the damage was the negligence of a third party (i.e., the builder) which was not excluded by the terms of the policy. (See generally *Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 403 [257 Cal.Rptr. 292, 770 P.2d 704].) Here, one might similarly argue that the predominating cause of the loss was the negligence of the individual or company who installed the copper pipe with insufficient protection against electrolysis. The Murrays' policy, however, specifically excludes coverage for any "defect, weakness, inadequacy, fault or unsoundness in . . . design, specifications, workmanship, construction [or] materials used in construction . . . of any property." (See *Brodkin* v. *State Farm Fire & Casualty Co.* (1989) 217 Cal.App.3d 210, 217-218 [265 Cal.Rptr. 710].) Thus, neither of the theories addressed in *Sabella* can be invoked in favor of the Murrays here.

[3] Referring to a standard homeowner's policy not dissimilar from the State Farm policy at issue here, one insurance industry source explains as follows: "If one stops at the end of [the] exclusion . . . it appears to be reasonable to deny coverage if the accidental damage to the insured's property . . . is *caused by* one of the excluded perils. However, the last provision of the Perils Insured Against section of the policy reveals the following statement: *under item . . . 2, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.* This clarifies the intent to cover unexcluded ensuing loss caused by any of the excluded perils." (3 Fire, Casualty & Surety Bulletins, Personal Lines, (Aug. 1988), Dwellings, p. Hob-2, italics in original.)

policy therefore provides coverage. They assert that even if the corroded pipe is not a covered loss because of the deterioration exclusion, the last portion of paragraph 1(e) obligates State Farm to cover the cost of cutting through the cement slab to reach the pipe that needs to be replaced. In addition to disputing the Murrays' characterization of the break as "sudden and accidental," State Farm counters that in order for the "tearing out and replacing" clause to be applicable, there must first be a *covered* loss.

■ It is unnecessary for us to determine whether, as a matter of law, the Murrays' leak was not sudden and accidental. Paragraph 1(e) states that if the insured suffers a covered loss as a result of water or steam, State Farm will pay for the cost of "tearing out and replacing any part of the building necessary to repair" the plumbing system or appliance where the water or steam originated. Thus under the literal terms of the policy, State Farm correctly argues that it has no obligation to pay for "tearing out and replacing" the portion of the building necessary to repair a plumbing problem unless the insured first demonstrates that the plumbing problem caused a covered loss.

There was no evidence before the court to indicate the Murrays suffered any consequential ensuing loss which was covered under the policy. The only loss flowing from the deteriorated pipe appears to be the crack in the cement slab perpendicular to the pipe.[4] (See *ante*, p. 60.) A separate exclusion in the policy (paragraph 1(i)), however, excludes coverage for "settling, cracking, shrinking, bulging, or expansion of . . . [the] foundation . . . ." Because there was no covered loss under the policy, paragraph 1(e) did not obligate State Farm to pay the cost of tearing out the cement slab in order to repair the damaged pipe.

## III

■ Having properly found in favor of State Farm on the contract causes of action, the trial court correctly granted summary judgment as to the tort and statutory causes of action as well. While there may be unusual circumstances in which an insurance company could be liable to its insured for tortious bad faith despite the fact that the insurance contract did not pro-

---

[4] In their reply brief, the Murrays argue that the appraisal umpire found they had sustained certain carpet damage which would qualify as an ensuing loss under the policy. We have reviewed the umpire's findings and are unable to accept this characterization. While it is true the umpire included the cost of replacing certain carpet in his findings, there is no mention of any *damage* to the carpet as a result of the leaking pipe. Rather, it appears the umpire was simply including in his total repair figure the cost of replacing the carpet which would have to be removed in order to cut through the slab and replace the deteriorated pipe.

vide for coverage,[5] no such circumstances are presented here. The Murrays assert State Farm performed an inadequate investigation before concluding the policy did not afford coverage for the loss. Whatever the merits of this assertion, the fact that the investigation yielded a correct conclusion precludes any claim that the inadequacy caused any damage.

## DISPOSITION

Judgment affirmed.

Todd, J., and Nares, J., concurred.

---

[5] For instance, the insurance company might be liable if it unreasonably delayed in performing an investigation of a claim before concluding there was no coverage and the insured suffered consequential loss as a result of the delay.