[No. B179028. Second Dist., Div. Five. Feb. 23, 2006.]

MAGDA BENAVIDES, Plaintiff and Appellant, v.
STATE FARM GENERAL INSURANCE COMPANY, Defendant and
Appellant;
LISA HALEY, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III.C. and III.D., and a portion of the concurring opinion.

**COUNSEL**

Cohen & Lord, Scott Richard Lord and James F. Boyle for Plaintiff and Appellant.

Horvitz & Levy, Mitchell C. Tilner, S. Thomas Todd; Sedgwick, Detert, Moran & Arnold and Maria Louise Cousineau for Defendant and Appellant.

Law Office of Lloyd C. Ownbey, Jr., and Lloyd C. Ownbey, Jr., for Defendant and Respondent.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

Before us are appeals from the judgment entered after a jury trial in an action based on the presence of mold in condominium units in Santa Monica instituted by plaintiff, Magda Benavides. Although she prevailed on her negligent investigation claim, plaintiff appeals from the judgment against her

insurer, defendant State Farm General Insurance Company (State Farm). Plaintiff argues that she is entitled to a new trial on her claims for contract breach and violation of the implied covenant of good faith and fair dealing against State Farm. Plaintiff does not argue she is entitled to a new trial on her negligent investigation claim on which she prevailed during the jury trial. But State Farm appeals from the judgment in favor of plaintiff on her negligent investigation claim. Plaintiff also appeals from a judgment in favor of defendant, Lisa Haley. Ms. Haley's condominium was upstairs from plaintiff's unit.

In the published portion of this opinion, we discuss whether plaintiff may recover for negligent handling of her claim despite the fact there is no coverage under the terms of her policy. As will be noted, we conclude plaintiff may not recover for the negligent handling of her claim because there is no coverage under the terms of the policy. Further, none of the circumstances which allow for a contract claim to be pursued as a tort cause of action are present. Hence, we reverse plaintiff's judgment against State Farm for negligent investigation. We affirm the judgment in all other respects.

## II. BACKGROUND

Plaintiff purchased a ground floor condominium unit in Santa Monica in 1994. In 2001, mold was found in the exterior walls of the property, including walls adjacent to plaintiff's unit. Subsequent testing revealed mold inside plaintiff's condominium. Plaintiff was advised by a physician to move out of her condominium. Plaintiff submitted a claim for additional living expense to State Farm, which hired a civil engineer to investigate. State Farm later denied plaintiff's claim on grounds the mold was an excluded loss which was not caused by a covered peril. Plaintiff sued State Farm and Ms. Haley. Plaintiff alleged State Farm had failed to properly investigate her claim, resulting in an erroneous coverage decision. The jury found there was no coverage and no breach of the insurance contract. However, the jury also found State Farm negligently investigated plaintiff's claim, causing her $260,000 in damages.

Ms. Haley lived upstairs from plaintiff. The complaint alleged that in May 2000, during remodeling, Ms. Haley's contractor caused water to leak into plaintiff's kitchen and living room. At trial, plaintiff presented evidence of other leaks from Ms. Haley's unit. The jury found Ms. Haley was not negligent with regard to water intrusion into plaintiff's unit.

## III. DISCUSSION

### A. *The Policy and the Jury Findings*

The State Farm insurance policy issued to plaintiff excluded mold unless a covered peril was the predominant cause of the mold. Plaintiff's additional living expense claim fell within "Coverage C—Loss of Use." That provision stated in part: "Additional Living Expense. When a Loss Insured causes the residence premises to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months." "Losses Insured" included "Coverage A—Building Property." Coverage A provided: "We cover: [¶] 1. alterations, appliances, fixtures and improvements which are part of the building contained within your unit; [¶] 2. items of real property which pertain exclusively to your unit; or [¶] 3. property which is your insurance responsibility under the governing rules of the condominium. . . ." (Italics omitted.) In "Section I—Losses Insured," the policy stated: "We insure for accidental direct physical loss to the property described in Coverage A [building property] . . . , except as provided in SECTION I—LOSSES NOT INSURED." "Section I—Losses Not Insured" stated in relevant part: "1. We do not insure under any coverage for any loss consisting of the items in paragraphs 2., 3., 4. or 5. below. This exclusion does not apply if the loss is caused by a peril which is not otherwise excluded. [¶] 2. We do not insure for any loss to the property described in Coverage A [building property] . . . which is caused by one or more of the items below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these: [¶] . . . [¶] f. continuous or repeated seepage or leakage of water . . . from a: [¶] . . . [¶] (2) household appliance; or [¶] (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors; [¶] which occurs over a period of time . . . ; [¶] g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown; [¶] h. corrosion, electrolysis or rust; [¶] i. Mold, fungus or wet or dry rot; [¶] j. contamination; [¶] . . . [¶] 4. We do not insure under any coverage for any loss which is caused by one or more of the items below, regardless of whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these: [¶] . . . [¶] c. Water Damage, meaning: [¶] (1) . . . surface water . . . . [¶] . . . [¶] 5. We do not insure for loss described in paragraphs 2., 3. and 4. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss: [¶] . . . [¶] b. defect, weakness, inadequacy, fault or unsoundness in: [¶] . . .

[¶] (2) design, specifications, workmanship, construction, grading, compaction; [¶] (3) materials used in construction or repair; or [¶] (4) maintenance; [¶] of any property (including land, structures, or improvements or any kind) whether on or off the residence premises; or [¶] c. weather conditions. [¶] However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section."

With respect to building property coverage, the insurance policy at issue was a first party "all-risk" policy. (*Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 399 [257 Cal.Rptr. 292, 770 P.2d 704]; Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2005) ¶ 6:250.1, p. 6B-24 (rev. # 1, 2005).) (The parties do not discuss and we do not consider the policy provisions relating to personal property loss.) An all-risk policy covers risks of physical loss except those excluded under the terms of the insuring contract. Under an all-risk policy, the limits of coverage are defined by the exclusions. (*Garvey v. State Farm Fire & Casualty Co., supra,* 48 Cal.3d at p. 406; *Nissel v. Certain Underwriters at Lloyds of London* (1998) 62 Cal.App.4th 1103, 1114 [73 Cal.Rptr.2d 174].) If an excluded risk is the "efficient proximate" or predominant cause of the loss, there is no coverage. (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761 [27 Cal.Rptr.3d 648, 110 P.3d 903]; *Garvey v. State Farm Fire & Cas. Co., supra,* 48 Cal.3d at pp. 402–403.) Stated conversely, if the predominate cause of loss is a covered risk, the insured's claim will be covered, even if a noninsured peril contributed to the injury. (*Julian v. Hartford Underwriters Ins. Co., supra,* 35 Cal.4th at p. 754; *State Farm Fire & Casualty Co. v. Von Der Lieth* (1991) 54 Cal.3d 1123, 1131 [2 Cal.Rptr.2d 183, 820 P.2d 285].)

The Supreme Court has held that when sufficient evidence is introduced to support the possibility that a plaintiff's damages were caused by both included and excluded risks, "Coverage should be determined by a jury under an efficient proximate cause analysis." (*Garvey v. State Farm Fire & Casualty Co., supra,* 48 Cal.3d at p. 412; accord, *State Farm Fire & Cas. Co. v. Von Der Lieth, supra,* 54 Cal.3d at p. 1131.) In *Garvey,* for example, there was conflicting evidence as to the causes of damage to the plaintiff's residence. Earth movement was an excluded peril. Contractor negligence was a covered risk. The Supreme Court held: "If the earth movement was the efficient proximate cause of the loss, then coverage would be denied . . . . On the other hand, if negligence was the efficient proximate cause of the loss, then coverage exists . . . . These issues were jury questions because sufficient evidence was introduced to support both possibilities." (*Garvey v. State Farm Fire & Casualty Co., supra,* 48 Cal.3d at pp. 412–413.)

It is undisputed plaintiff's condominium unit owners policy excluded coverage for mold. But an exception to the mold exclusion arose under the

following policy language found in "Section I—Losses Not Insured": "We do not insure under any coverage for any [losses not insured]. *This exclusion does not apply if the loss is caused by a peril which is not otherwise excluded.*" (Italics added.) A State Farm claims representative, Julie Lynn Nisbet, testified at trial the foregoing clause meant, "[I]f the cause of the mold is not otherwise excluded, then [State Farm] could provide coverage for the mold." Stated differently, she testified: "Mold is an excluded peril. However, if the predominant cause is covered, this paragraph gives that coverage back."

The jury found by an 11-to-1 margin that Sate Farm performed all of its contractual duties under the policy it issued to plaintiff. Further, the jury found by a 10-to-2 margin that the "Haley water event in May 2000" was not the predominant cause of the mold in plaintiff's unit. As noted, mold is a noncovered injury. But the evidence was subject to the interpretation that the May 2000 water leakage from Ms. Haley's unit was of the type that it *could* be a covered event; i.e. the leakage was a predominate cause of plaintiff's loss. Hence, that potentiality was presented to the jury. And the jury found a preponderance of the evidence demonstrated that the May 2000 water leakage from Ms. Haley's unit, which was immediately remediated, was not a predominate cause of plaintiff's injuries. Plaintiff does not contend that substantial evidence does not support the jurors' findings in this regard. Nor does plaintiff argue that the trial court committed evidentiary error in any respect. Hence, these issues have been forfeited. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317]; *Johnston v. Board of Supervisors* (1947) 31 Cal.2d 66, 70 [187 P.2d 686], disapproved on another point in *Bailey v. County of Los Angeles* (1956) 46 Cal.2d 132, 139 [293 P.2d 449].) Therefore, in the absence of a loss covered by the policy, we are confronted with the question of whether plaintiff may recover for negligent failure to investigate her claim.

### B. *There Was No Tort Liability in This Case for Negligent Investigation of a First Party Insurance Claim Absent Coverage*

We turn to the question whether, absent coverage, State Farm can be held liable in tort for negligently investigating plaintiff's insurance claim. The jury found State Farm negligently investigated plaintiff's claim causing her $260,000 in damages. We conclude there was no tort liability on State Farm's part for negligent investigation of plaintiff's first party insurance claim.

The relationship between insured and insurer is contractual. Nevertheless, it is well established that tort liability will lie against an insurer for breach of the implied covenant of good faith and fair dealing. (*Frommoethelydo v. Fire Ins. Exchange* (1986) 42 Cal.3d 208, 214 [228

Cal.Rptr. 160, 721 P.2d 41]; *Silberg v. California Life Ins. Co.* (1974) 11 Cal.3d 452, 461 [113 Cal.Rptr. 711, 521 P.2d 1103]; *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 575 [108 Cal.Rptr. 480, 510 P.2d 1032]; see *Kransco v. American Empire Surplus Lines Ins. Co.* (2000) 23 Cal.4th 390, 402 [97 Cal.Rptr.2d 151, 2 P.3d 1].) The implied covenant arises from the contract. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 35-36 [44 Cal.Rptr.2d 370, 900 P.2d 619]; *Tran v. Farmers Group, Inc.* (2002) 104 Cal.App.4th 1202, 1216–1217 [128 Cal.Rptr.2d 728].) ■ The Supreme Court has held: "In addition to the duties imposed on the contracting parties by the express terms of their [insuring] agreement, the law implies in every contract a covenant of good faith and fair dealing. (*Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198]; see also Comment, *Extending the Insurer's Duty of Good Faith and Fair Dealing to Third Parties Under Liability Insurance Policies* (1978) 25 UCLA L.Rev. 1413, 1418–1424.) The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement. (*Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 940 [132 Cal.Rptr. 424, 553 P.2d 584]; *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 429 [58 Cal.Rptr. 13, 426 P.2d 173]; *Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d at p. 658.)" (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [169 Cal.Rptr. 691, 620 P.2d 141]; see *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1153 [271 Cal.Rptr. 246].)

■ The Supreme Court has held, "The precise nature and extent of the duty imposed by such an implied promise will depend on the contractual purposes." (*Egan v. Mutual of Omaha Ins. Co., supra,* 24 Cal.3d at p. 818; see *Jonathan Neil & Assoc., Inc. v. Jones* (2004) 33 Cal.4th 917, 937 [16 Cal.Rptr.3d 849, 94 P.3d 1055].) In the first party insurance context, the insured's primary contractual right is to receive benefits due under the policy. (*CalFarm Ins. Co. v. Krusiewicz* (2005) 131 Cal.App.4th 273, 285–286 [31 Cal.Rptr.3d 619]; *Love v. Fire Ins. Exchange, supra,* 221 Cal.App.3d at p. 1153.) Tort liability for an insurer's breach of the implied covenant of good faith and fair dealing arises when the insurer unreasonably and in bad faith withholds payment of the insured's claim. (*Frommoethelydo v. Fire Ins. Exchange, supra,* 42 Cal.3d at pp. 214–215; *Love v. Fire Ins. Exchange, supra,* 221 Cal.App.3d at p. 1151.) The Supreme Court has held: " '[When] the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort.' (*Gruenberg* [v. *Aetna Ins. Co., supra,* 9 Cal.3d at p. 575]; accord, *Silberg* [v. *California Life Ins. Co., supra,* 11 Cal.3d at p. 461]; *Fletcher*[ v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 401–402 [89 Cal.Rptr. 78]].) For the insurer to fulfill its obligation not to impair the right of the insured to receive the benefits of the agreement, it . . . must give at least as much consideration to the latter's interests as it does to its own. (*Silberg*[ v. *California Life Ins. Co., supra,* 11

Cal.3d at p. 460].'' (*Egan v. Mutual of Omaha Ins. Co., supra,* 24 Cal.3d at pp. 818–819.) The Supreme Court has further explained, "[A]n insurer cannot reasonably and in good faith deny payments to its insured without fully investigating the grounds for its denial. (*Egan* v. *Mutual of Omaha Ins. Co.*[, *supra,*] 24 Cal.3d [at pp.] 818–819 . . . .)'' (*Frommoethelydo v. Fire Ins. Exchange, supra,* 42 Cal.3d at p. 215.) When an insurer withholds benefits *for proper cause,* however, there is no breach of the implied covenant. (*Love v. Fire Ins. Exchange, supra,* 121 Cal.App.3d at p. 1151; *California Shoppers, Inc. v. Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 54–55 [221 Cal.Rptr. 171].) This is because, as the Court of Appeal held in *California Shoppers, Inc.*: "[D]eclining to perform a contractual duty under the policy *with proper cause* is not a breach of the implied covenant. (See *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 770 [206 Cal.Rptr. 354, 686 P.2d 1158][, overruled in *Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85, 87–88 [44 Cal.Rptr.2d 420, 900 P.2d 669]].)'' (*California Shoppers, Inc. v. Royal Globe Ins. Co., supra,* 175 Cal.App.3d at p. 54, original italics.) Thus, to establish an implied covenant tortious breach, an insured must show first, that benefits were due under the policy, and second, that the benefits were withheld without proper cause. (*Progressive West Ins. Co. v. Superior Court* (2005) 135 Cal.App.4th 263, 278 [37 Cal.Rptr.3d 434]; *Love v. Fire Ins. Exchange, supra,* 221 Cal.App.3d at p. 1151.)

■ It follows an insured cannot maintain a claim for tortious breach of the implied covenant of good faith and fair dealing absent a covered loss. (*Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at pp. 35–36 [no potential coverage hence no duty to defend]; *McMillin Scripps North Partnership v. Royal Ins. Co.* (1993) 19 Cal.App.4th 1215, 1222 [23 Cal.Rptr.2d 243]; *Love v. Fire Ins. Exchange, supra,* 221 Cal.App.3d at p. 1153; *Murray v. State Farm Fire & Casualty Co.* (1990) 219 Cal.App.3d 58, 66 [268 Cal.Rptr. 33]; *Brodkin v. State Farm Fire & Casualty Co.* (1989) 217 Cal.App.3d 210, 218 [265 Cal.Rptr. 710]; see *Kopczynski v. Prudential Ins. Co.* (1985) 164 Cal.App.3d 846, 849 [211 Cal.Rptr. 12].) If the insurer's investigation—adequate or not—results in a *correct* conclusion of no coverage, no tort liability arises for breach of the implied convenant. (*Murray v. State Farm Fire & Casualty Co., supra,* 219 Cal.App.3d at p. 66; *Brodkin v. State Farm Fire & Casualty Co., supra,* 217 Cal.App.3d at p. 218; *Kopczynski v. Prudential Ins. Co., supra,* 164 Cal.App.3d at p. 849.)

■ The cause of action at issue is not breach of the implied covenant of good faith and fair dealing, but *negligence.* The question arises, therefore, whether, in the absence of benefits due under the insuring contract, plaintiff can recover for State Farm's *negligent* investigation of her claim. We conclude in this case that absent coverage, there is no tort liability for improperly investigating a first-party insurance claim whether the insurer's conduct is characterized as an implied covenant breach or negligence. The

same logic that precludes imposition of damages for breach of the implied covenant in the absence of coverage in this case also rules out recovery for negligence. The relationship between the parties is contractual. The insured's primary right is to receive compensation for covered losses. The insurer's duty is not to unreasonably withhold the payment of benefits due. When, as here, no benefits are due, a negligent investigation does not frustrate the insured's right to the benefits of the contract. The insured who is not entitled to insurance proceeds has suffered no injury as a result of the manner in which the insurer's investigation was conducted. The Court of Appeal's conclusion in *Murray v. State Farm Fire & Casualty Co., supra,* 219 Cal.App.3d at pages 65–66, with regard to a breach of the implied covenant claim is equally applicable to a negligence cause of action: "Whatever the merits [of the] assertion [of inadequate investigation], the fact that the investigation yielded a correct [no coverage] conclusion precludes any claim that the inadequacy caused any damage." (See *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 880 [93 Cal.Rptr.2d 364]; *Brodkin v. State Farm Fire & Casualty Co., supra,* 217 Cal.App.3d at p. 218.)

■ Also, the California Supreme Court has identified the limited circumstances where the litigants' relationship, which has its basis in a contract, can give rise to a tort claim. In *Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 990 [22 Cal.Rptr.3d 352, 102 P.3d 268], the Supreme Court synthesized the relevant test for allowing a contract based claim to be pursued as a tort cause of action: " 'Generally, outside the insurance context, "a tortious breach of contract . . . may be found when (1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion; or (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages." [Citation.] Focusing on intentional conduct gives substance to the proposition that a breach of contract is tortious only when some independent duty arising from tort law is violated. [Citation.] If every negligent breach of a contract gives rise to tort damages the limitation would be meaningless, as would the statutory distinction between tort and contract remedies.' (*Erlich v. Menezes* [(1999)] 21 Cal.4th [543,] 553–554 [87 Cal.Rptr.2d 886, 981 P.2d 978].)"

In *Robinson Helicopter,* the Supreme Court recited its prior holding in *Erlich* thusly: "In *Erlich* . . . , we held that a party's contractual obligation may create a legal duty and that a breach of that duty may support a tort action. We stated, '[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law. [Citation.]' (*Ibid.*) [¶] We went on to describe several instances where tort damages were permitted in contract cases. 'Tort

damages have been permitted in contract cases where a breach of duty directly causes physical injury [citation]; for breach of the covenant of good faith and fair dealing in insurance contracts [citation]; for wrongful discharge in violation of fundamental public policy [citation]; or where the contract was fraudulently induced. [Citation.]' [Citation.] '[I]n each of these cases, the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm. [Citation.]' [Citations.]" (*Robinson Helicopter Co., Inc. v. Dana Corp., supra,* 34 Cal.4th at pp. 989–990.)

This synthesis was based on principled distinctions between the purposes of contract and tort law. Citing largely to *Harris v. Atlantic Richfield Co.* (1993) 14 Cal.App.4th 70, 77–80 [17 Cal.Rptr.2d 649], former Chief Justice Malcolm Lucas explained the differing purposes of tort and contract remedies thusly: " 'The traditional goal of contract remedies is compensation of the promisee for the loss resulting from the breach, not compulsion of the promisor to perform his promises. Therefore, "willful" breaches have not been distinguished from other breaches. [Citation.] The restrictions on contract remedies serve purposes not found in tort law. They protect the parties' freedom to bargain over special risks and they promote contract formation by limiting liability to the value of the promise. This encourages efficient breaches, resulting in increased production of goods and services at lower cost to society. [Citation.] Because of these overriding policy considerations, the California Supreme Court has proceeded with caution in carving out exceptions to the traditional contract remedy restrictions. [Citations.]' ([*Harris v. Atlantic Richfield Co., supra*] 14 Cal.App.4th at p. 77.) [¶] The *Harris* court set forth as reasons for denying tort recovery in contract breach cases (1) the different objectives underlying the remedies for tort and contract breach, (2) the importance of predictability in assuring commercial stability in contractual dealings, (3) the potential for converting every contract breach into a tort, with accompanying punitive damage recovery, and (4) the preference for legislative action in affording appropriate remedies. (*Harris* [*v. Atlantic Richfield Co.*], *supra,* 14 Cal.App.4th at pp. 81–82; see also *Foley*[ *v. Interactive Data Corp.* (1988)] 47 Cal.3d [654], 683, 694, fn. 31, 696 [254 Cal.Rptr. 211, 765 P.2d 373].)" (*Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85, 98 [44 Cal.Rptr.2d 420, 900 P.2d 669].)

Plaintiff's negligence claim does not fall within the circumstances identified by the California Supreme Court which allow a contract based cause of action to be pursued as a tort claim. State Farm owed no contractual duty to plaintiff. Her negligence claim contains none of the elements identified in *Robinson Helicopter* and *Erlich.* Hence, plaintiff's negligence verdict and the ensuing judgment must be reversed.

We recognize that in *Murray v. State Farm Fire & Casualty Co., supra*, 219 Cal.App.3d at page 66, footnote 5, the Court of Appeal stated in obiter dictum that there may be a situation where even if there was no coverage, potential liability could still exist because of the unreasonable delay in performing an investigation. In *Murray,* the Court of Appeal noted, "[T]he insurance company might be liable if it unreasonably delayed in performing an investigation of a claim before concluding there was no coverage and the insured suffered consequential loss as a result of the delay." (*Ibid.*) Further, in *Brizuela v. CalFarm Ins. Co.* (2004) 116 Cal.App.4th 578, 594 [10 Cal.Rptr.3d 661], the Court of Appeal noted, again in dictum, an insurer might be liable for an implied covenant breach if, instead of investigating a noncovered claim, the insurance company embarked on a campaign to intimidate its insured into settling. (See *Progressive West Ins. Co. v. Superior Court, supra*, 135 Cal.App.4th at p. 280.) We need not discuss these holdings. None of the extreme circumstances identified is present here nor was the case litigated on these theories. There are no elements of detrimental reliance as in *Murray* nor the extreme conduct discussed in *Brizuela.* Further, we note none of these cases discusses the effect of *Robinson Helicopter* or *Erlich.* The effect of *Robinson Helicopter* or *Erlich* was not before the Courts of Appeal in *Murray* and *Brizuela* and the aforementioned analysis arose solely in the context of obiter dictum.

C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. DISPOSITION

The judgment in favor of defendant, Lisa Haley, and against plaintiff, Magda Benavides, is affirmed. The judgment in favor of plaintiff and against defendant, State Farm General Insurance Company, is reversed. Defendants are to recover their costs on appeal from plaintiff.

Kriegler, J., concurred.

**MOSK, J.,** Concurring.—I concur.

I agree that the judgment in favor of plaintiff and against defendant State Farm Insurance Company should be reversed. Plaintiff could not recover for negligence in investigating the insurance claim because "[n]egligence is not among the theories of recovery generally available against insurers. Delay or failure to pay policy benefits may be actionable as a breach of contract or bad

---

*See footnote, *ante,* page 1241.

faith, not negligence." (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2005) ¶ 11:205, p. 11-48.)

\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

\*See footnote, *ante*, page 1241.